STATE OF INDIANA *v*. STULTZ, RECEIVER.

[No. 26,252.   Filed July 2, 1935.]

*James M. Ogden,* Attorney-General, *E. Burke Walker,* Deputy Attorney-General, and *F. E. Schortemeier,* for appellant.

*Abram Simmons* and *Virgil M. Simmons,* for appellee.

ROLL, J.—The State of Indiana filed its claim with the receiver of the Wells County Bank for a preferred claim, and judgment was rendered allowing said claim as a general claim, but denied it preference. Appellant's motion for a new trial was overruled and this appeal was duly perfected, assigning as error the action of the court in overruling its motion for a new trial, for the reason therein assigned, that the finding of the court is not sustained by sufficient evidence.

It appears from the record that the state board of finance of the State of Indiana had duly and regularly designated the Wells County Bank a public depository to receive state funds, and that said bank had qualified to accept state funds to the maximum amount of $10,000, and that at the time in question the state treasurer had deposited with said bank that amount of the state's funds. That the secretary of state had named one Cecil C. Lockwood of the city of Bluffton, in Wells county, as one of his deputies, to manage and operate a branch automobile license office as provided by §10116, Burns Ann. St. 1926, §47-307, Burns Ann. St. 1933, §11135, Baldwin's 1934, Acts 1921, p. 821. That the said Cecil C. Lockwood, as manager of the branch office of the automobile license department came into possession of state funds derived from the sale of automobile license plates, and deposited the money received therefor with the Wells County Bank, in the name of "State of Indiana; Auto License Department, Cecil C. Lockwood." That said deposit was not a general checking deposit, but it was for the purpose of transferring the funds to the state automobile license department. That on the 13th day of February, 1929, the day said Wells County Bank was closed by the state banking department, there was on deposit to the credit of the "State of Indiana, Auto License Department, Cecil C.

Lockwood," the sum of $8,183.76. That at that time there was also on deposit in the Wells County Bank the sum of $10,000.00, deposited by the authority of the Indiana state finance board, by the treasurer of state. The deposit by the treasurer of state plus the deposit made by the secretary of state through his deputy, Cecil C. Lockwood, made a total of $18,183.76, in the Wells County Bank on the day said bank closed its doors to business.

The state, by this appeal, contends that it is entitled to a preference over general creditors on its claim for $8,183.76, for two reasons: (1) That a claim due the state, by reason of its sovereignty, is entitled to preference over all other creditors, and (2) the excess deposit was unlawful and the bank thereby became a trustee *ex maleficio* and the deposit is a trust fund, entitled to priority.

The appeal of this case was perfected and briefs filed, before this court decided the case of *Fidelity & Deposit Co.* v. *Brucker* (1933), 205 Ind. 273, 183 N. E. 668, wherein this court decided the first of the above propositions adversely to appellant. In that case the question of preference to priority of state funds deposited in a bank, over general creditors was fully discussed and the authorities on the subject were reviewed and discussed and we need not again discuss the question here, but only approve our holding in that case.

The second question therefore is the sole and only question presented by appellant's brief, and as far as we are advised is one of first impression in this state. Under the authority granted by §10116, Burns Ann. St. 1926, the secretary of state established a branch automobile license bureau in the city of Bluffton, Wells county, Indiana, for the purpose stated in said statute and appointed Cecil C. Lockwood as his deputy in charge

of said branch office. This statute provides, in part, that:

"In order to facilitate the operation of the provisions of this act and to expedite the issuing of licenses and registration of title certificates, the secretary of state is hereby authorized and empowered to deputize such officers of motor clubs or other persons as he may think necessary for that purpose."

By this appointment Cecil C. Lockwood became a deputy secretary of state, and therefore an agent of the secretary of state for the purpose of distributing licenses and registration of title certificates, and collect the fees therefor prescribed by statute. When Cecil C. Lockwood, as agent of the secretary of state and acting as his deputy, received money from applications for titles and licenses, it was in legal effect the receipt by the secretary of state. The act of the agent or deputy of the secretary of state, within the scope of his authority, is the act of the secretary himself. So when Cecil C. Lockwood came into possession of money from the sale of license plates, and certificates, as the deputy of the secretary of state, his possession was the possession of the secretary of state himself, and the money so received was public funds and belonged to the State of Indiana, and it was so held by the Appellate Court in the case of *Downey* v. *Mayr, Secretary of State* (1932), 95 Ind. App. 179, 184, 183 N. E. 872, wherein the court said:

"Merely because a secretary of state does not do his duty and issue licenses so that the operators of motor vehicles will not be violating the law is no reason why monies received by him as such officer are not public funds."

Under §10090, Burns Ann. St. 1926, §47-107, Burns 1933, §11112, Baldwin's 1934, such money so received is public funds. This section provides:

"The secretary of state shall provide notary public service, for the convenience of the public, when

making application for licenses, at a cost of twenty-five cents for each acknowledgment taken, and the notary fees so collected shall be paid into the general fund of the state. All money collected by the secretary of state for the registration and re-registration of motor vehicles, motor bicycles, tractors, trailers, semi-trailers, chauffeurs' licenses, duplicate plates and transfers, shall be deposited daily with the treasurer of state, and shall be paid into the general fund. All money collected under the provisions of this act, including notary fees, less an amount equal to the expenditures of the automobile license department for operating expenses, capital outlays and fixed charges, shall be available for the state highway commission, as provided by law."

Full directions are given by this section of the statute to the secretary of state as to what disposition he shall make of the fees he shall so receive. The statute specifically states that, "All money collected by the secretary of state for the registration and re-registration of motor vehicles, motor bicycles, tractors, semi-tractors, chauffeurs' licenses, duplicate plates, and transfers, shall be deposited daily with the treasurer of state, and shall be paid into the general fund." By §12634, Burns Ann. St. 1926, §61-620, Burns 1933, §13824, Baldwin's 1934, the secretary of state is required to deposit all money collected by him with the treasurer of state the day following its collection. This section provides, among other things, that:

"All public funds paid into the treasury of the state, counties, cities and towns and school cities and school towns shall be deposited daily in one or more designated depositories in the name of the state, county, municipality, or school corporation by the officer having control thereof, except that the public funds collected by the secretary of state, auditor of state, attorney-general, clerk of the Supreme Court, chief oil inspector, commissioner of fisheries and game, or any state officer or board having an office in the state capitol building other

than the treasurer of state, shall be deposited with the treasurer of state; all such state funds to be deposited on the day following the collection thereof, . . . And no such officer shall draw any check upon any such depository for any purpose except for the payment of a warrant drawn by the auditor of state, or warrant or order drawn by the county auditor, or the proper officer of a city, town, school city or school town, or in payment of a legal claim against a township, and if any such officer or person mentioned herein shall fail so to deposit such funds, or shall deposit the same in any manner except in accordance with the provisions of this act, or shall draw any check against such funds except as provided for in this act, he shall be deemed guilty of embezzlement of public funds. . . ."

Section 2467, Burns Ann. St. 1926, §10-1701, Burns 1933, §2464, Baldwin's 1934, being a section of our criminal code, provides:

"Whoever, being charged or in any manner intrusted with the collection, receipt, safekeeping, transfer or disbursement of any money, funds, securities, bonds, choses in action or other property belonging to or under the control of the state or of any state officer, or belonging to or under the control of any county, civil or school township, city or town, or any officer thereof, converts to his own use, or to the use of any other person or corporation, in any manner whatever, contrary to law, or uses by way of investment in any kind of property, or loans, either with or without interest, or deposits with any person or corporation, contrary to law, or exchanges for other funds except as allowed by law, any portion of such money, funds, securities, bonds, choses in action or other property, is guilty of embezzlement, . . ."

We find no statute that authorizes the secretary of state to deposit money in any public depository. The above statutes make it the duty of the secretary of state to deposit all state funds collected by him, with the treasurer of state, and by so doing he is relieved from all further responsibility. Section

12635, Burns. Ann. St. 1926, §61-621, Burns 1933, §13825, Baldwin's 1934, provides:

"When the public funds of the state, county, city, town, township, or school corporation are deposited by the officers having control thereof, as provided herein, such officer and his bondsmen shall be exempted from all liability thereon by reason of loss of any such funds from failure, bankruptcy or any other act of any such depository or depositories, to the extent of the funds in the hands of any such depository or depositories at the time of such failure or bankruptcy: Provided, This act shall be in effect and full force on and after December 1, 1907."

Cecil C. Lockwood at the time here in question named by the secretary of state as his deputy, and placed in charge of the branch automobile license office at Bluffton, Wells county, Indiana. By being so named and designated by the secretary of state, he became a deputy secretary of state and his agent for the purpose for which he was appointed. As shown above, the fees collected from the business transacted, were the funds of the State of Indiana and the legal title thereto never at any time belonged to Cecil C. Lockwood, but he, as a deputy secretary of state, held them in trust for the State of Indiana, and Cecil C. Lockwood had no authority to deposit the state's funds in the Wells County Bank either in his own name or in the name of the State of Indiana. Such a deposit was unauthorized by law and was therefore unlawful under the statutes. While it is true that the Wells County Bank was a duly designated public depository, but only to the extent of $10,000. The treasurer of state had theretofore deposited the maximum amount fixed by the state board of finance and the bank had its full quota of state funds on deposit at the time the secretary of state deposited the $8,183.76. The Wells County Bank was not a public depository, qualified to receive state funds in excess of

$10,000. So the fact that, in this case, the secretary of state deposited state funds in a duly designated and qualified state depository is not of any particular significance. The Wells County Bank was no more of a public depository for the receipt of state funds, in excess of $10,000 than any other bank. It is shown by the evidence that the bank when it received for deposit the $8,183.76 from Cecil C. Lockwood had full knowledge that said money belonged to the state and that it was trust funds in the hands of Cecil C. Lockwood. It also was charged with knowledge of the statutes of Indiana limiting the authority of the secretary of state in depositing and disposing of state funds coming into his hands. It had knowledge of the fact that at the time it received said funds from the secretary of state, that it had on deposit state funds to the full extent allowed under the law governing public depositories. It was fully aware of the fact that it. had qualified to receive not more than $10,000 of state funds. Therefore, whatever result may follow it is not because of any mistake of fact. We think it well settled by the great weight of authority that public funds deposited in a public depository contrary to the provisions of the statute is a wrongful and unlawful deposit and a trust *ex maleficio* is thereby created so as to give to the unit of government whose funds have been so deposited a priority over all general depositors of such bank after insolvency.

The Supreme Court of Alabama in the case of *Montgomery, Superintendent of Banks* v. *Sparks* (1932), 225 Ala. 343, 345, 142 So. 769, said:

"It is a principle supported by numerous authorities that the unauthorized or unlawful deposit of public funds in a bank which subsequently becomes insolvent creates a trust relationship in such funds between the bank and the community to which they belong. It is obvious that to hold otherwise in such

cases would leave an open door to fraud and would allow the interests of the public to be jeopardized by the wrongful act of a trusted officer. Where a state treasurer deposits state funds in a bank, without authority of law, and the bank had notice of the character of the funds which were commingled with the general assets of the bank and used in the payment of debts of the bank, which later suspended payment and went into the hands of a receiver, the lien of the state for the payment of the trust fund willl attach to all assets of the bank as a preferred claim. *State* v. *Bruce*, 17 Idaho 1, 102 P. 831, 134 Am. St. Rep. 245, L. R. A. 1916 C, 1; *Independent Dist.* v. *King*, 80 Iowa 497, 45 N. W. 980; *Myers* v. *Board of Education*, 51 Kan. 87, 32 P. 658, 37 Am. St. Rep. 263. This doctrine has not only received the approval of our own court in the case of *Green* v. *City of Homewood, supra,* but by many of state courts as well as the Supreme Court of the United States. See note in case of *Maryland Casualty Co.* v. *Rainwater,* 51 A. L. R. 1342. It is true that in our case, of *Green* v. *City of Homewood,* 222 Ala. 225, 131 So. 897, the bank there was a designated depository, but it was held that the sum received on deposit in excess of the amount authorized by law was unlawful and that, to this extent, the stated had a lien under the doctrine that we apply in the case at bar."

The statutes of Maryland required the county commissioners to turn over to the county treasurer all funds received from the sale of bonds. The commissioners made sale of bonds, and deposited the proceeds thereof in the bank instead of turning it over to the treasurer. The Supreme Court of Maryland in the case of *Commissioners of Frederick County* v. *Page* (1932), 163 Maryland 619, 635, 164 Atl. 182, said:

"Under such circumstances, since the depositary was charged with notice of the statute, and had actual notice of the nature and character of the funds deposited, by the general weight of authority the funds so received were impressed with a trust in favor of the county, and the trustee held them for its use as a trustee ex maleficio. *Reichert* v.

*United Savings Bank*, 255 Mich. 685, 239 N. W. 393, 394, 18 C. J. 580, Note 29."

Missouri announced the same principle in the case of *School District of Platt County* v. *Railey & Brother Banking Company* (1932), 227 Mo. App. 543, 55 S. W. (2nd) 699. In this case the treasurer of the school district deposited school funds in a bank that had not qualified as a public depository, and had on deposit more than $3000 of public funds when the bank failed. The court said in passing on the question of an unlawful deposit (p. 544):

"Under such circumstances it is agreed that whatever funds of the school district were in the bank at the time it closed and passed to the commissioner of finance were trust funds, and that claimant is entitled to recover for that amount and such is the law. . . ."

"The deposit of school money in a bank which has not been legally designated as a depository is illegal and a bank receiving the deposit under such circumstances becomes a trustee *ex maleficio*." (p. 545.)

We do not think it necessary to quote from other cases on this point. The citation of the following cases we think will suffice. *State ex rel. Anderson* v. *Thum* (1898), 6 Idaho 323, 55 Pac. 858; *Jarvis County Treasurer* v. *Hammons* (1927), 32 Arizona 444, 259 Pac. 886; *City of Sturgis* v. *Mead County Bank* (1917), 38 S. D. 317, 161 N. E. 327; *White* v. *Greenlee* (1932), 330 Mo. 135, 49 S. W. (2d) 132; *Monongalia County Court* v. *Bank of Monongalia Valley* (1932), 112 W. Va. 476, 164 S. E. 659. A deposit of public funds in excess of that designated as the maximum to be received by the public depository, under the statutes above quoted, is in violation of law. It is unlawful for a public officer to deposit money in any other manner than that prescribed by statute. While the statutes do not in express

terms make the act of the bank in receiving public funds in excess of its maximum amount unlawful, nevertheless the act is unlawful on the part of the officer if the bank participates therein. The bank is bound to know the law, and therefore knows that it cannot lawfully receive public funds in excess of the maximum amount for which it had qualified, and when the Wells County Bank received the $8,183.76 from Cecil C. Lockwood, knowing that it was state funds, and knowing that it had already on deposit the maximum amount of state funds it could receive, it was *in pari delicto* with the wrong doer and its act became as unlawful as that of the officer. It was decided by the Appellate Court of this state in *State For Use of Lincoln Township* v. *Citizens Nat'l. Bank* (1930), 91 Ind. App. 106, 170 N. E. 346, that a bank which was not designated as a township depository was bound to take notice of regulations, prohibitions, and limitations upon powers of township trustees and must be held to have conducted *its* business with such trustee with full knowledge of duties of the trustees.

The secretary of state had no discretion as to the disposition of the public money he receives. Under the law he can only deposit it with the treasurer of the state. A deposit by him in a public depository is without authority of law, and a subsequent withdrawal thereof from that bank is likewise unlawful. When the Wells County Bank accepted the deposit from Cecil C. Lockwood of said $8,183.76, they knew it was a trust fund, and that it was unlawful for said secretary of state to make said deposit, and they knew they had no right to receive it as a general deposit. Under such circumstances they became a trustee *ex maleficio* of said funds for the use and benefit of the state. Title to said funds never vested in said bank and the general creditors have no interest in said funds

whatever. It is not taking away anything that belongs to the bank. The state is only claiming that which belongs to them and to which they have at all times retained title. It is not in the strict sense a preference, but priority of payment. When the appellee receiver took charge of the funds in the bank and all of its assets, he took them subject to all the legal and equitable claims of others. *Terre Haute Trust Co.* v. *Scott* (1932), 94 Ind. App. 461, 181 N. E. 369. We hold that the claim of the state for priority should have been allowed and the cause should be reversed for that reason.

Appellee filed cross error, wherein they say that the lower court erred in overruling the verified written objection of the appellee to the court assuming jurisdiction to try and determine this cause; second, the court erred in assuming jurisdiction to try and determine this cause; third, in overruling the demurrer of the appellee to the complaint and to each paragraph of complaint. The record shows that the state, on September 20, 1929, filed its verified claim with the receiver of the Wells County Bank for the sum of $8,183.76 and asked that it be allowed as a preferred claim, to which appellee filed an answer in general denial and the court, on October 9, 1929, rendered judgment in favor of the state for the amount as a common claim, but denied it preference. On June 21, 1930, by leave of court, the state filed its complaint in this cause. That part of appellant's complaint that alleges facts which it claims entitles it to have the judgment above referred to set aside are as follows:

"Plaintiff further says that subsequent to the filing of said claim, and without any notice to the State of Indiana, the court set down said claim for hearing on the 9th day of October, 1929, at 10 o'clock a. m. on said day, and that subsequent thereto, and not until about 9:30 o'clock on the morning of said day, that said claim had been set

for hearing, the said Wells Circuit Court ordered and directed the said Cecil C. Lockwood to appear in said court as a witness at the hearing to be held at 10 o'clock a. m. on such day, and that no notice other than said order and direction to the said Cecil C. Lockwood to attend in said court was given to the said State of Indiana regarding a hearing, trial or any other matter concerning its aforesaid claim. Plaintiff further says that by reason of the very short time given in advance of the time said cause was set for hearing the State of Indiana had no opportunity whatsoever to be represented by counsel and to present the law and facts to the court respecting its aforesaid claim, and did not appear therein, and no counsel, witness or other person appeared therein for and on behalf of the State of Indiana whereby the court rendered judgment against the said State of Indiana, and found and adjudged that the aforesaid claim was not entitled to any preference whatsoever, which said judgment is now in full force and effect.

"The plaintiff further says that its aforesaid claim was not, and is not, disputed and no issue was therein made and adjudicated as to the amount and sufficiency of said claim as a general unsecured claim and claim not entitled to preference, so that in and by virtue of said adjudication nothing was gained in money value on account of the allowance of said claim as a common, general and unpreferred claim; but that, on the contrary, the adjudication of said court that said claim was not entitled to preference was in its scope, purpose and effect an adjudication upon the rights of the plaintiff to have its claim allowed as a preferred claim by default; and that the plaintiff had no notice or knowledge of the proceedings had and taken in the Wells Circuit Court from the time of the filing of said claim until more than thirty days had expired from the date of such trial, finding and judgment, and, therefore, the plaintiff had no notice or knowledge whatsoever concerning the disposition of its said claim until after the expiration of the time in which it could have filed and presented a motion for a new trial of its claim and cause of action.

"Plaintiff further says that it has no general authority to employ private attorneys in the conduct

of its business and affairs, and that it acts in all matters not otherwise expressly provided by law by and through its attorney-general, who conducts trials to which the said State of Indiana may be or become a party, and represents its interests in all matters relating to its rights, powers and finances, and has designated no other authority whatsoever to represent its interests in the Wells Circuit Court; and that said attorney-general was at all times, after the filing of said claim, ready, able, and willing to appear in and before the said Wells Circuit Court to prosecute the said claim to a successful conclusion, finding and judgment as a preferred claim if he had been given and had received any notice whatsoever of the time when and place where said claim would be heard and determined in such reasonable time as that he could travel from the City of Indianapolis to the City of Bluffton; that such notice and knowledge received by and through the said Lockwood was wholly insufficient to enable the said attorney-general by himself and through his deputies and assistants to travel from the said City of Indianapolis to the City of Bluffton to enable him to appear therein and represent the State of Indiana as claimant.

"Plaintiff further says that the said Cecil C. Lockwood was not granted, and neither did he have any general or discretionary authority to represent, or claim to represent, the State of Indiana in any matter pertaining to its rights, powers or litigation in any manner involved in the Wells Circuit Court, and to which the State of Indiana was a proper party and litigant; and neither did the State of Indiana, by any custom, course of dealing or representation hold out or claim that the said Cecil C. Lockwood could or would, in any manner, appear for and represent its interests in any matter pertaining to its said claim or the litigation of its said claim against the Wells County Bank, or the receiver thereof, pending in the Wells Circuit Court.

"That by reason of the failure and omission of the judge of the Wells Circuit Court or any other person by the authority of said court to give to the plaintiff any notice of the time fixed for the hearing of said claim in time to appear in said court and represent the rights of the State of Indiana, the

aforesaid claim was adjudicated and disallowed as a preferred claim, wholly on account of the plaintiff's inadvertence, surprise and excusable neglect, and its rights as theretofore asserted in and by its said claim were adjudicated, settled and finally determined against it by default; that a copy of the plaintiff's claim filed in the Wells Circuit Court as aforesaid reads as follows, to-wit:"

Appellant's second paragraph so far as this phase of the case is concerned is the same as the first. Appellee appeared specially and filed his written objections to the jurisdiction of the court to grant the relief prayed for in said complaint. Appellee's objections assigned five reasons and are in substance as follows:

(1) That the complaint showed that a final judgment had been rendered and remained in full force, and that appellant did not show sufficient facts to amount to mistake, inadvertence, surprise or excusable neglect as required by §423, Burns Ann. St. 1926.

(2) That the facts show that the judgment appellant sought to set aside was not a default judgment.

(3) and (4) That appellant did not allege sufficient facts to give the court jurisdiction to set aside and vacate said judgment as provided by sections 423 and 651 Burns Ann. St. 1926, and does not show facts sufficient to give the court jurisdiction over the person of the defendant or over the subject matter of the action.

(5) That the application of appellant to set aside the judgment was filed at a subsequent term to the one in which the judgment was rendered.

The court overruled appellee's objections, and appellee filed his demurrer to each paragraph of complaint. The memorandum to the demurrer raises substantially the same questions as those presented by his written objections above set out. The demurrer was overruled.

Appellee filed answer in three paragraphs. The first was general denial, the second a plea of payment, and

the third paragraph alleged that after appellant's claim was allowed as a general claim and judgment entered in favor of appellant for the sum of $8,183.76 and with full knowledge of all the facts, appellant accepted two separate payments on said judgment, the first was October 22, of $1,227.57, and the second on April 18, 1930, of $818.38, both payments being credited on said judgment. The evidence fully sustained these alleged facts.

Appellee contends that appellant was not entitled to have the judgment of the court allowing his claim in full as a common claim, set aside, to permit it to try the question of preference under §423, Burns Ann. St. 1926, §2-1068, Burns 1933, §173 Baldwin's 1934. That plaintiff is always in court and the court owes the plaintiff no duty under the law, to notify it when its case is set for trial. Under the facts set out in appellant's complaint, we are of the opinion the court did owe the appellant the duty to notify it in time for it to appear and present the question of priority of its claim which was the only question in dispute, and the only question that was being resisted by appellee that would justify setting aside the judgment under §423, *supra*. The denial of appellant's claim of priority was a judgment against it on that issue, and we think the evidence fully supports the allegations in the complaint and that the allegations are sufficient to withstand a demurrer. We do not think the trial court committed reversible error in overruling appellee's demurrer to the complaint.

Appellee contends that the acceptance of the two payments on the judgment was a ratification and affirmance of the judgment, and it is thereby bound.

If we are correct in our conclusion that the Wells County Bank received the funds here in question as

trustee, and therefore never obtained title to the said money, the fact that it had paid appellant part of its own money by way of dividends should not preclude it from receiving the rest of it. A very similar question was presented to the Court of Appeals of Ohio in the case of *Board of Township Trustees of Van Buren Township* v. *Gray, Superintendent of Banks* (1933), 47 Ohio App. 216, 221, 191 N. E. 802. The court in passing upon the question said:

"Manifestly it was the duty of the Citizens State Bank as trustee of the money thus unlawfully received by it, to make restitution, even though not requested by plaintiff to do so; and surely it was no less its duty to make restitution, though in the form of lawful orders issued against the fund arising from the unlawful deposits; it was merely doing in piecemeal what it should have done as a whole, and the sureties should not be permitted to gain an advantage by reason of unlawful deposits, which gain would result if the $5241.55 were not regarded as restitution."

Appellee by part payment of the judgment did not change its position to its harm in any manner, and we can see no reason why it should profit by doing in piecemeal what it should have done as a whole. We do not think the trial court erred in its ruling on the questions presented by appellee in his cross errors.

Judgment reversed with instructions to the lower court to enter judgment allowing appellant's claim as a preferred claim for the amount stated in the complaint, less the amount of the two payments made thereon by appellees.