LUTZ, JR., ATTORNEY GENERAL, ET AL. *v.* TRUSTEES OF PURDUE UNIVERSITY.

[No. 15,660. Filed May 12, 1936. Rehearing denied July 2, 1936. Transfer denied September 30, 1936.]

*Philip Lutz, Jr.,* Attorney-General, and *Joseph W. Hutchinson,* Assistant Attorney-General, for appellants.

*Stuart, Stuart & De Vol* and *Cable G. Ball,* for appellee.

WOOD, J.—This is an appeal from a judgment of the Tippecanoe Circuit Court awarding appellee the right to be reimbursed out of the fund established pursuant to the provisions of "the state sinking fund for public deposits act," Chapter 33, Acts Special Session 1932, p. 141, §§61-801, 61-819, Burns 1933, §§13826-13844, Baldwin's 1934, for public funds of Purdue University on deposit in the Fowler Bank City Trust Company of Lafayette, Indiana, on the date of its closing June 2, 1934. The proceedings in this cause finally culminating in the present appeal were had pursuant to Section 9 of said act (§61-809, Burns 1933, §13834, Baldwin's 1934). Neither the propriety or regularity of the proceedings are questioned. The appellant filed a motion for a new trial alleging as causes therefor, that the decision of the court was not sustained by sufficient evidence, and that the decision of the court was contrary to law. This motion was overruled, and this action of the trial court is the only error assigned for reversal.

In its answer brief appellee asserts that all items of its claim against the state sinking fund for public deposits have been allowed and disposed of except a deposit styled "Residence Hall Development Fund," the unpaid balance of which is $33,662.46, and a deposit known as "Purdue X-R Fund," the unpaid balance of which is $13,409.57. We will assume that these facts are correctly stated, inasmuch as the appellants have not

questioned them in any manner, and will limit our resume of the facts and opinion to the questions presented by these two items.

From the facts, which were all stipulated, it appears that the appellee is a corporation organized and existing under and by virtue of the laws of the State of Indiana, as a state educational institution known as Purdue University; on September 29, 1932, and continuously thereafter until closed, the Fowler Bank City Trust Company, which was a successor in business of the National Fowler Bank, was a public depository duly designated by the state board of finance under the public depository act of 1907, and acts amendatory thereof and supplemental thereto as a depository of funds belonging to appellee; on September 29, 1932, the National Fowler Bank issued to appellee its certificate of deposit in words and figures as follows:

"CERTIFICATE OF DEPOSIT

THE NATIONAL FOWLER BANK        No. 6078

Lafayette, Ind., Sept. 29, 1932:      $53,560.00
Purdue University, Residence Hall Development Fund has deposited in this Bank
EXACTLY $53560 and 00 Cts        DOLLARS
PAYABLE TO THE ORDER OF THEMSELVES
On the return of this Certificate properly endorsed
Six (6) months 9/27/32 date with interest at the rate of three per cent per annum.
No interest after twelve months.
To comply with Section 19 of the Federal Reserve Act, this Bank reserves the right to require 30 days' notice of intended withdrawal.

C. G. IRION,
Auditor.

NOT SUBJECT TO CHECK",

on which at the time of the trial of this cause the court adjudged there was a balance of $33,662.46 unpaid, the interest accruing on said fund from December 1, 1932, was never diverted to the "state sinking fund for public

deposits," though appellee never denied the obligation to so divert said interest; said fund represented by said certificate was held by the appellee for use in connection with powers conferred upon it by Acts of the Legislature of the State of Indiana concerning the erection and maintenance of dormitories and other buildings enumerated in said acts. On December 24, 1932, The National Fowler Bank issued to appellee its certificate of deposit in words and figures as follows:

"CERTIFICATE OF DEPOSIT

THE NATIONAL FOWLER BANK                    No. 6195

Lafayette, Ind., Dec. 24, 1932             $21,489.72
Edward C. Elliott and R. B. Stewart as Trustees for Purdue University X. R. Fund have deposited in this bank
EXACTLY $21489 & 72 Cts                    DOLLARS
PAYABLE TO THE ORDER OF Themselves Six (6) Months after December 20, 1932. On the return of this Certificate properly endorsed Six (6) months after December 20, 1933, with interest at the rate of Three per cent per annum. No interest after twelve months.

To comply with Section 19 of the Federal Reserve Act, this bank reserves the right to require 30 days' notice of intended withdrawal.

                              J. K. KENSINGER,
                                      A.  Secy.

NOT SUBJECT TO CHECK

                  (Endorsement)
              'Pay to the order of
                  The Trustees of Purdue University
                  (Signed) R. B. STEWART,
                          EDWARD C. ELLIOTT' ",

on which at the time of the trial of this cause the court adjudged there was a balance of $13,409.57 unpaid. No part of the interest on this fund was ever diverted to the "state sinking fund for public deposits" after December 1, 1932. Said Purdue University X-R Fund was a fund belonging to appellee, established by one David

E. Ross for the purpose of providing a fund for retirement of members of the staff of said University, and at the time of the closing of said bank was held and administered by the appellee as a trust fund for the purpose of said donation. No one had any interest in or control over said fund except appellee. On January 2, 1933, from deposits made prior to that date appellee had on deposit in said depository bank in all funds belonging to it, the aggregate amount of $621,253.16. After January 2, 1933, said appellee made further deposits in said depository bank and after January 2, 1933, but prior to the closing of said depository bank on June 2, 1934, the withdrawals of money from said depository bank by appellee amounted in the aggregate to the sum of $8,608,867.94.

It is agreed that the funds deposited in the bank were "public deposits" and that they were deposited in accordance with the terms and conditions of the "public depository act of 1907, and all acts amendatory thereof and supplemental thereto," as defined by paragraph (d) of Sec. 16, of the "state sinking fund for public deposits" act, *supra*. When the funds were thus deposited in the bank upon a general deposit, the relationship of debtor and creditor was created, in legal effect the funds were loaned to the bank, *Storen* v. *Sexton* (1936), 209 Ind. 589, 200 N. E. 251, and the bank issued to the appellee as evidence thereof the two certificates of deposit above set out.

The appellee contends and the trial court held, that the facts as stipulated brought the funds of appellee, which are here in controversy, within the terms and provisions of the second proviso of Sec. 2 of the above act (§61-802, Burns 1933, §13827, Baldwin's 1934), which reads as follows: *"Provided, further, That for the purpose of this act all deposits made prior to the said first Monday in January, 1933, shall be designated*

as 'old money' and all deposits made on or subsequent to such date shall be designated as 'new money' and whenever on or subsequent to said first Monday in January, 1933, any public depository shall have both 'old money' and 'new money' on deposit by the State of Indiana or any of its political subdivisions, all withdrawals of money by such public depositors after the first Monday in January, 1933, shall be withdrawals of 'old money' until the amount thereof on deposit shall be exhausted; thereafter, but not before, the obligation of any bond for the repayment of such 'old money' shall be released, and the title of the State of Indiana or any of its political subdivisions to any securities deposited by any depository to secure the repayment of such 'old money' shall be divested and such securities returned to such depository; the payment of all 'new money' shall, however, be secured by the terms of this act;" that the funds represented by the two certificates of deposit were withdrawn from the depository bank before it was closed and that therefore all funds of appellee remaining in the bank at that time was new money, so the appellee was entitled to have its claim paid out of the "state sinking fund for public deposits."

In its brief appellee asserts that Sec. 2 of the act is clear and unambiguous, that no occasion exists to resort to the rules of statutory construction, and that it is only necessary to make a proper application of the terms and conditions of the statute to the facts stipulated in order to uphold the judgment from which this appeal is taken.

The record before us presents but one question for our consideration, namely: Was the money in the depository bank at the time it was closed, for which the two certificates of deposit were issued, "old money" or "new money" as defined by Sec. 2 of the act?

While for the purpose of this discussion we may concede that Sec. 2 of the act is clear, unambiguous, and

beyond the necessity of reverting to the rules of statutory construction to ascertain the intent and meaning of the legislature, a concession which the courts should always be willing to make if justified by the language in which the statute is couched; still, in applying the statute to a given set of facts, it must of necessity follow that such an application must be made, if possible, as will give full force and effect to the terms and provisions of the statute as a whole and will not defeat the purpose of its enactment by the Legislature. Thus with these principles of law in mind, we cannot concede that a proper application of the act has been made to the facts presented by the record in the case at bar.

Appellee contends with much force and ingenuity that since from the facts it appears that between January 2, 1933, the beginning of the new money date, at which time it had $621,253.16 on deposit and June 2, 1934, when the bank closed, it having made withdrawals from various funds, into which it had its deposits allocated, amounting in the aggregate to $8,608,867.94, including money deposited after January 2, 1933, this case comes within the language of the statute which provides that "whenever on or subsequent to said first Monday in January, 1933, any public depository shall have both 'old money' and 'new money' on deposit by the State of Indiana or any of its political subdivisions all withdrawals of money by such public depositors after the first Monday in January, 1933, shall be withdrawals of 'old money' until the amount thereof on deposit shall be exhausted."

This argument might be applicable if the 'old money' and 'new money' had become so commingled that their respective identities could no longer be traced and the one separated from the other. The facts confronting us do not show such a situation existed in this case. It will

be observed in both instances that these deposits were made before January 2, 1933, and that they were made as time deposits, upon which the depository agreed to pay interest at the rate of three per cent per annum, evidenced by a certificate of deposit, not subject to check, issued by the bank in each instance as provided by Sec. 61-612, Burns 1933, Sec. 13816, Baldwin's Ind. St. 1934; see also *Storen* v. *Sexton, supra.*

Appellee further contends and it was stipulated that, "by withdrawal through its deposit known as its general account and proper entries on its own books of account, (it) could have made available to itself any amount represented by a particular fund on deposit in said depository, however designated, without a specific withdrawal against such particular fund." We do not think any particular system of bookkeeping which appellee may have seen fit to adopt could, of itself, have any controlling influence in determining the respective rights of the parties to this controversy. What the parties actually did as presented by the facts must be our guide.

While the facts as stipulated show that withdrawals were made, the facts also show that when the bank closed June 2, 1934, appellee still had on deposit in the "Residence Hall Development Fund" an unpaid balance of $33,662.46 upon a deposit made to the credit of that fund September 29, 1932, as evidenced by the certificate of deposit issued on that date, and in the Purdue University X-R Fund an unpaid balance of $13,409.57 upon a deposit made to the credit of that fund December 24, 1932, as evidenced by the certificate of deposit issued on that date, both of which certificates of deposit were retained by and in possession of appellee June 2, 1934, when the depository bank closed, had never been fully paid and canceled, had never in any way lost their iden-

490

tity, but represented funds deposited in said bank previous to January 2, 1933.

The facts in this case as stipulated bring it fully within the terms and conditions of the first proviso of Sec. 2 of the "state sinking fund act," which reads as follows: *"Provided, however,* That such sums in such state sinking fund on and after the first Monday in January, 1933, shall not be available for the payment of deposits in such depositories as shall have suspended payment if the deposits were made by the State of Indiana or any of its political subdivisions prior to the first Monday in January, 1933, but the payment of such deposits shall be secured as they were secured at the time of deposit."

The balance of the money unpaid on the two certificates of deposit was "old money" as defined by the statute and the appellee was not entitled to a judgment directing its payment out of the "state sinking fund for public deposits." This conclusion is in harmony with and supported by the late case of *Williamson* v. *Civil City of Huntington* (1936), 101 Ind. App. 280, 196 N. E. 348.

Judgment reversed with instructions to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.