## AMERICAN SURETY CO. OF NEW YORK v. BALDWIN.

No. 6066.

Circuit Court of Appeals, Seventh Circuit.

June 23, 1937.

Burke G. Slaymaker, Hugh E. Reynolds, and Slaymaker, Merrell & Locke, all of Indianapolis, Ind., for appellant.

George W. Henley, of Bloomington, Ind., for appellee.

Before EVANS and MAJOR, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Appellant, defeated in its suit to secure priority over the other creditors of the Spencer National Bank, of which appellee is receiver, upon its claim for $5,035.49, contends that the court erred in not entering judgment as prayed.

Appellant was surety upon the bond of one H. W. Johnson as treasurer of the School Town of Spencer, Ind. As such official he deposited the school funds in the bank, of which he was assistant cashier, and, during the same period, the county treasurer kept his official deposits in the same institution. These deposits were made in pursuance of the United States banking act, 46 Stat. 809, 12 U.S.C.A. § 90, under which it is provided that any national bank may secure deposits of public money to the extent that state banking institutions may do so under the state law. The statutes of Indiana, sections 12611–12635, Burns' Ind.Stat.Ann.1926, provide that public funds may be deposited in banks in an amount fixed by proper official authorities. Under this law the bank was an authorized depository to the extent of $15,000. Deposits made wrongfully or in excess of the amount of the depository bond constitute embezzlement.

On July 6, 1932, the county treasurer drew against his account in the bank a warrant or check for $14,539.98 in favor of the school treasurer, who immediately indorsed and deposited it in his official account. The county treasurer's account was charged and the school treasurer's credited with this amount.

On July 9 the township trustee drew against his account in the bank a warrant or check for $195.90 in favor of the school treasurer, who indorsed and deposited it in his account, the township account being charged and the school account credited with the amount.

These transactions resulted in a balance to the school treasurer's credit at the time the bank closed, of $20,035.49, or $5,-035.49 more than it was authorized to receive.

■ Appellant as surety, having reimbursed the school authorities for this sum, subrogated, as it was, to the rights of the school authorities (United States Fidelity & Guaranty Co. v. Union Bank, 228 F. 448 [C.C.A.6]), brought this action. It contended in the District Court and insists now that the excess deposit constituted a trust fund belonging to the school treasurer and that it should, because of such character, be awarded priority in distribution of the bank's assets. State ex rel. Symons v. Wells County Bank, 208 Ind. 543, 196 N.E. 873, 103 A.L.R. 611. There the bank was a lawful depository to the extent of $10,000. It received for deposit state funds in excess of that amount. The court concluded that such a deposit was in violation of the law; that the act of the bank in receiving it was unlawful; that the bank was bound to know the law and that under such circumstances it became a trustee ex maleficio for the use and benefit of the state. The court decided, therefore, that the title to the funds never passed and that as a result the creditors of the bank had no interest therein.

Appellant insists that this construction of the Indiana statute is a binding precedent controlling in the determination of appellant's rights in liquidation of the bank's assets. Appellee insists that appellant's right must be determined irrespective of the statute in accord with the principles and doctrine of the national banking code.

■ National banks are instrumentalities of the federal government created for a public purpose, and, as such, necessarily, subject to the paramount authority of the United States. Any attempt by a state to define their duties or to control the conduct of their affairs is void if it conflicts with the laws of the national government and either frustrates the purpose of the federal legislation, or impairs the efficiency of these agencies of the government to discharge the duties for the performance of which they are created. The national banking code directs the comptroller to make a ratable dividend of the money of a banking association, and a state law directing the receiver of a bank which shall have become insolvent to give priority to the deposit of a savings bank, is an interference with the federal law, inasmuch as the state statute is entirely inconsistent with the federal statute. Davis v. Elmira Sav. Bank, 161 U.S. 275, 16 S.Ct. 502, 40 L.Ed. 700. There the court overruled the contention that the effect of the state statute was to make the savings bank, in the event of insolvency, the owner of a sum equivalent in amount to the sum of money by it deposited and thus to remove the applicability of the federal statute on the ground that this fund was no part of the assets of the bank. The court held that such result

would destroy the ratable distribution ordered by the Congress. The court commented, however, that where any particular contract is made by a national bank which from its nature may rise in time to title to a specific fund, such claim, if not in violation of the act of Congress, will be allowed, and that what at the time of insolvency belongs to the claimant, does not in fact belong to the bank. The court approved San Diego County v. California Nat. Bank (C.C.) 52 F. 59, where the fund received by the national bank, which the party depositing had no authority in law to deposit, was not a part of the assets of the bank. It approved likewise Massey v. Fisher (C.C.) 62 F. 958, where the court found that the facts made of the bank a trustee and that the fund, being held in trust, was not part of the bank's assets.

In the later case of McClellan v. Chipman, 164 U.S. 347, 17 S.Ct. 85, 41 L.Ed. 461, the court found that a state statute of Massachusetts did not frustrate the purpose of the national banking act and distinguished the situation there presented from that · in the case previously cited. The court commented that the general rule is that national banks are subject to the state laws and are governed in their daily course of business far more by the laws of the state than by those of the nation; that their contracts, acquisition, and transfer of property, their right to collect their debts, and their liability to be sued for debts, are all based on state laws. It gave recognition to an exception to the general rule, saying that national banks after all are necessarily subject to the paramount authority of the United States and that any attempt by a state to define their duties is void when it frustrates the purpose and impairs the efficiency of national legislation. Other illuminating opinions appear in First National Bank of San Jose v. State of California, 262 U.S. 366, 43 S.Ct. 602, 67 L.Ed. 1030; Easton v. Iowa, 188 U.S. 220, 221, 23 S.Ct. 288, 47 L.Ed. 452; Yates v. Jones National Bank, 206 U.S. 158, 27 S. Ct. 638, 51 L.Ed. 1002; Scott v. Armstrong, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059.

Following these analyses, the United States Circuit Court of Appeals for the Eighth Circuit, in Fiman v. State of South Dakota, 29 F.(2d) 776, held that where a state deposits its funds in a national bank in an amount exceeding the ·limit prescribed by statute, the excess deposit is a trust fund. The court gave recognition to the restriction upon the applicability of state laws as defined by Mr. Justice White in the cases cited, and pointed out that, inasmuch as the funds there concerned were illegally deposited in violation of the statute of the state prohibiting deposits exceeding certain amounts, there was no question that moneys so deposited became trust funds belonging to the state. Certiorari was denied, 279 U.S. 841, 49 S.Ct. 254, 73 L.Ed. 987.

The court further held that the cash remaining on hand at the time of deposit and at the time of the closing of the institution presumably was the trust fund; that where a trustee has mingled trust property with his own, the legal presumption is that'he gave regard to the true character of the fund and neither paid out nor invested. the res of the trust in other property but kept it sacred. The presumption is based upon the theory that all withdrawals are from money which the tortfeasor has a right to expend in his own business and that the balance which remains includes the trust fund which he has no right to use. Obviously this is a rebuttable presumption but, in the absence of any evidence overcoming it, it is controlling. Similar conclusions were reached in American Surety Co. of New York v. Jackson, 24 F.(2d) 768 (C.C.A.9); American Surety Co. v. Waggoner Nat. Bank, 83 F. (2d) 99 (C.C.A.5); Fidelity & Deposit Co. of Maryland v. Farmers' Bank of Bates County, Mo., 44 F.(2d) 11 (C.C.A.8); United States Fidelity & Guaranty Co. v. Union Bank & Trust Co., 228 F. 448 (C.C. A.6); Board of Com'rs v. Strawn, 157 F. 49, 15 L.R.A.(N.S.) 1100 (C.C.A.6); Merchants' Nat. Bank of Helena v. School Dist. No. 8 of Meagher County, Mont., 94 F. 705 (C.C.A.9); Ginsburg et al. v. Mears, 170 F.'427 (C.C.A.9).

■■ But appellant is confronted by further difficulty. If we conclude, for the purpose of disposition of this case, that, upon the deposit being made, the bank became trustee de son tort to the extent of the excess deposited, before recovery can be allowed there must exist a further essential element, namely, before there can be creation of any trust, there must be a res upon which it must fix, a specific fund. In other words, to create a resulting trust of the character here under consideration, there must have come into the bank, an addition to or augmentation of its funds, to which the trust attaches.

The owner of a trust fund must assume the burden of ascertaining and tracing it, showing that the assets which have come into the hands of the trustee have been directly added to or benefited by an amount of money realized from property held in trust; and recovery is limited to the extent of this increase or benefit. City Bank of Hopkinsville v. Blackmore (C.C.A.) 75 F. 771; Cushman v. Goodwin, 95 Me. 353, 50 A. 50; Ginsburg et al. v. Mears (C.C.A.) 170 F. 427, 429; Board of Commissioners v. Strawn, Receiver, 157 F. 49, 15 L.R.A.(N.S.) 1100 (C.C.A.6). It is urged by appellant that drawing a check upon one account and depositing it to another was in effect the same as withdrawing the money and redepositing it to the new account. But this is not what happened. The check was immediately redeposited and the treasurer's fund debited and the school trust fund credited. The bank received nothing. Its assets and liabilities were the same as before. There was no augmentation. The receipt by a bank of a check drawn against the account of one of its depositors does not bring anything into the bank and does not augment the assets. Ellerbe v. Studebaker Corp. (C.C.A.) 21 F.(2d) 993. One of the reasons for the holding in Connolly v. Lang, 68 F.(2d) 199 (C.C.A.7) was that there was no augmentation by the shift in credits. In the case of Blakey, Receiver v. Brinson, 286 U.S. 254, 52 S.Ct. 516, 518, 76 L.Ed. 1089, 82 A.L.R. 1288, the court said: "* * * the mere debiting of his account, without more, for the reimbursement of the bank for the obligation which it was supposed to have incurred or paid, lends no support to such an inference. The cancellation of the credit balance by the debit neither suggests any intention to establish a trust nor points to any identifiable thing which could be the subject of it."

A complete answer to appellant's position is found in Beard v. Independent District of Pella City (C.C.A.) 88 F. 375, 381 where the court said: "It is claimed in argument that the court must treat the case just as though the treasurer of the school district had presented the check, had obtained the money thereon, and had then deposited the money in the bank as the money of the school district, but this was not in fact done; and as against the creditors, whose money in fact created the cash amount coming into the hands of the receiver, why should fiction be resorted to in order to sustain a preference on behalf of the school district to payment out of a fund not augmented in fact by any sum belonging to the district?"

Judge Alschuler, speaking for this court of the character of such transactions, in Allied Mills v. Horton, 65 F.(2d) 708, 710, 90 A.L.R. 1 (C.C.A.7), said: "The reason generally assigned in the cases is that in such transactions there is no augmentation of the assets of the bank. There is merely a transfer of existing assets of the bank from one to another. * * * Appellant insists that what was here done was equivalent to Crisp's drawing the cash out of the bank and paying it in again to meet the draft, and points out the incongruity in supporting a trust where the cash is checked out of the bank and at once paid to the bank to take up the draft, but denying it where the drawee gives a check upon the bank to pay the draft and the bank accepts it in payment and delivers the draft and bill of lading. While the contention may have the merit of plausibility, nevertheless there must somewhere be a line of demarcation between what does and what does not augment the bank's funds to constitute a trust. The nearer the facts approach that line the greater the incongruity may seem in whatever decision is reached. * * * Through the transaction the bank received nothing. Crisp's check depleted his own account in the bank, and the bank's liability for the same amount to the drawer of the draft at once attached. No cash came to the bank. Nothing was taken from or added to its assets."

In Jennings, Receiver, et al. v. United States Fidelity & Guaranty Co., 294 U.S. 216, 55 S.Ct. 394, 397, 79 L.Ed. 869, 99 A.L.R. 1248, we find this language: "But the situation is very different when what has been received by the collecting agent is not a thing at all, but a reduction of liabilities. * * * The truth of this statement, though obvious enough upon its face, finds point and confirmation when the benefit, if any, accruing to the debtor is viewed as of the time of insolvency or later. What was done * * * has not increased the assets available for distribution in the hands of the receiver. What was done * * * has had no effect after insolvency except to diminish liabilities."

There having been no augmentation, no addition to the bank funds to which the trust could attach, it follows that there was no res upon which the trust could fix.

The decree of the District Court is affirmed.