STATE OF INDIANA ET AL. *v.* TOWN OF BREMEN ET AL.

[No. 27,022. Filed March 22, 1938. Rehearing denied May 17, 1938.]

126

*Philip Lutz, Jr.,* Attorney-General, *Omer S. Jackson,* Attorney-General, and *Joseph W. Hutchinson,* Deputy Attorney-General, for the State.

*Claude D. Carson, George F. Stevens* and *Roscoe L. Egger,* for appellees.

FANSLER, J.—The town of Bremen, at the beginning of the year 1931, in conformity with the Public Depository Law, contracted with the Union State Bank of Bremen as its depository for public funds, and accepted $12,000 of bonds as security in lieu of a bond. The charter of that bank expired on February 18, 1931. Prior to the expiration of the charter, a new bank was organized by the stockholders of the Union State

Bank, under the name of "First Union State Bank of Bremen," and, on the 18th day of February, 1931, the new bank purchased all of the assets, and assumed all of the liabilities, of the old bank and succeeded to its business. The new bank at that time did not apply to be designated as a public depository, made no depository contract, gave no bond, and did not become a legal depository under the statute. At the time of the expiration of the charter of the old bank, the town had on deposit with it, under its depository contract, $39,116.46. After the new bank took over the business of the old, the officers of the town continued to deposit public funds in the new bank, as though it were a legal public depository, and from that date, to and including the 31st of December, 1932, deposited in the First Union State Bank public funds in the sum of $87,784.06, and during the same period withdrew sums aggregating $95,105.94. On the 2nd day of January, 1933, the First Union State Bank, for the first time, made a contract with the board of finance of the town of Bremen as a public depository. On and before that day, the First Union State Bank carried on its books a deposit account in favor of the town of Bremen, on which there appeared a balance, on the 2nd day of January, 1933, of $31,794.58. When the new bank took over the business of the old bank it simply continued the account of the town of Bremen, and all deposits and withdrawals were treated on the books of the bank as though all of the business during the years 1931 and 1932 had been transacted with one bank under the depository contract entered into between the town of Bremen and the old bank. From the beginning of January, 1933, the First Union State Bank paid over to the town interest on its deposits, including the balance shown by its books as of the first business day of January, 1933, which interest was forwarded and paid by the town of Bremen to the

State Sinking Fund for Public Deposits. The town of Bremen has continued at all times to hold the bonds deposited with it, as security for its deposits; by the old bank. The First Union State Bank continued to operate until the 7th day of April, 1934, at which time its operations were suspended by the Department of Financial Institutions, and since which time it has been in liquidation.

By this action, the town of Bremen seeks to have determined the amount which it is entitled to receive from the State Sinking Fund for Public Deposits. Creditors of the bank and the liquidating agency intervened, and, by appropriate pleadings, sought to recover the collateral held by the town for the benefit of the First Union State Bank and its creditors. The principal controversy involves the question of whether or not the sum shown to have been on deposit on the first business day of January, 1933, is to be considered "old money," which is not insured by the State Sinking Fund for Public Deposits, or "new money," which is insured by that fund. The trial court concluded that the fund was "new money," and that the First Union State Bank is entitled to the return of the bonds pledged as security. The costs were assessed against the State Sinking Fund for Public Deposits.

Error is assigned upon the overruling of a motion for a new trial, and upon the conclusions of law, but, substantially, the entire controversy is involved in the question of whether the funds referred to are "old money" or "new money."

When the new bank took over the assets, and assumed the liabilities, of the old bank it became liable to the town for the public funds for which the old bank was indebted to the town under its depository contract; not because of a contract with the town, but because of its contract with the old bank. The liability

of the old bank to pay the deposit indebtedness was not cancelled, and the stockholders of the old bank continued to be liable to the town. As to these deposits, the relationship of debtor and creditor existed between the old bank and the town. The new bank made no contract, and did not become a public depository, eligible to receive deposits of public funds, until the beginning of the year 1933, and therefore the deposits in the new bank, by the officers of the town, during the years 1931 and 1932, were unauthorized and in violation of the statute. The new bank obtained no title to the funds so deposited. Such funds are treated as held in trust for the benefit of the town. *State* v. *Stultz, Receiver (State ex rel. Symons, Bank Commissioner* v. *Wells County Bank et al.),* (1935), 208 Ind. 543, 196 N. E. 873. When funds were deposited in the old bank the relationship of debtor and creditor was created between the bank and the town. The funds became the property of the bank, and it was indebted to the town in a corresponding amount. By its contract with the old bank, the new bank became obligated to pay the debt of the old bank, and for the amount of that indebtedness it became the debtor and the town its creditor. As to the deposits made in the new bank during the years 1931 and 1932, the relationship of debtor and creditor did not arise. The bank held such funds as trustee for the town. Withdrawals by the town must be treated as withdrawals of its funds held in trust for it by the bank, since it would be inequitable to permit the bank to use funds which were the property of the town in paying an indebtedness for which it was liable to the town. But if it is considered that the new bank took title to the funds which were deposited with it prior to January, 1933, it gave no security therefor, and the town had no security but the bank's agreement to pay. It was obligated to pay the indebtedness of the old bank which it assumed, and for this the town

had collateral security and the liability of the stock-holders of the old bank, in addition to the responsibility of the new bank. There was no agreement between the parties as to whether withdrawals—payments on account, if the relationship of debtor and creditor existed—were to be applied to the indebtedness of the old bank or the indebtedness of the new. It is well settled that, where there is no agreement of the parties, courts will apply payment to an unsecured indebtedness rather than to one that is secured. *M. A. Sweeney Co. et al.* v. *Fry* (1898), 151 Ind. 178, 51 N. E. 234; *McCauley et ux.* v. *Holtz* (1878), 62 Ind. 205. It has been held that, under the common-law rule in force in this state, a payment will be applied to a contract originally entered into by the debtor rather than to one with a third person which he has assumed. *Snyder* v. *Robinson et al.* (1871), 35 Ind. 311; *State* v. *United States Fidelity & Guaranty Co.* (1910), 81 Kan. 660, 106 P. 1040; *Blair Town Lot & Land Co.* v. *Hillis* (1888), 76 Iowa 246, 41 N. W. 6. It seems clear therefore that, in any event, payments made by the new bank upon the check or other order of the town, and referred to as withdrawals, between the date when it took over the old bank's business, and the first business day of January, 1933, must be credited against deposits made by the town directly with the new bank. The withdrawals exceeded such deposits. The balance therefore must be treated as reducing the indebtedness of the old bank, which the new bank assumed.

On January 2, 1933, when the town entered into a depository contract with the new bank, there was no depository indebtedness due from the new bank to the town. The only indebtedness was the balance of the deposit indebtedness of the old bank, which the new bank had agreed to but had not yet paid. It is true that the obligation was carried on the books of the bank as a

deposit, but the bank had not until then been a legal depository, and until then the stockholders in the old bank and the collateral held by the town were security for payment. But, under the new contract, the new bank became a legal depository, and the amount due was treated by the parties as a deposit. True, the bank and the officers of the town had treated it as a deposit before, but a depository contract and bond, which were necessary to make it a legal deposit, were lacking. When the depository contract was supplied, nothing was lacking. The bank, upon that day, for the first time, became a legal depository. A new relationship was created between the town and the new bank, which had not existed before. The deposit indebtedness of the old bank for the first time became the direct obligation of the new bank. Theretofore its obligation to pay did not arise out of a contract with the town, but out of its agreement with the old bank. It is as though the old bank had made a deposit of the amount due the town in another bank, and had notified the town. The town would not be bound until it recognized the new bank as its depository. When the new bank was legally recognized as the depository, to be looked to for the funds involved, the contract of the old bank was superseded, and the old bank and its stockholders were thereby relieved.

As of the date of this new depository contract, the State Sinking Fund for Public Deposits became effective as a guarantor of deposits. "Old money," which means money on deposit in a public depository prior to the first banking day of January, 1933, is not insured by the fund. "New money," deposited on and after that date, is insured. Money on deposit is referred to in the statute, but credits, amounts due from debtors, are involved. The amount due was the direct obligation of the old bank until the first Monday in January, 1933. On that date, the new bank became a legal depository. It

treated the amount previously due from the old bank as a deposit account with the acquiescence of the town. Thus the old debt was paid, and a new legal depository account, with a credit for the amount involved, came into existence. The account therefore must be treated as "new money," secured by the State Sinking Fund for Public Deposits. *Williamson, Auditor, et al.* v. *Civil City of Huntington et al.* (1936), 101 Ind. App. 280, 196 N. E. 348, and *Lutz, Atty. Gen., et al.* v. *Trustees of Purdue University* (1936), 102 Ind. App. 482, 1 N. E. (2d) 680, are readily distinguished. In those cases the same bank was a legal public depository both before and after the first Monday in January, 1933.

Since, under the new bank's depository contract, it was not required to give a bond, or deposit collateral, and, since the bonds held by the town to secure the performance of the contract of the old bank had been assigned to the new bank, it was entitled to have the bonds delivered to it when it entered into its depository contract with the town.

Appellants contend that, since the plaintiff below elected to bring this action, rather than cause the questions involved to be brought before the court by the person or persons in charge of the liquidation of the closed bank, as provided by section 61-809 Burns' Ann. St. 1933, section 13834 Baldwin's Ind. St. 1934, the costs should not have been charged against the State Sinking Fund for Public Deposits. But the representative of the Department of Financial Institutions of Indiana in charge of liquidation was made a party and filed a cross-complaint, so that the effect is the same as though the proceeding had been brought as contemplated by the statute, and the town of Bremen had filed a cross-complaint. But it cannot be overlooked that the town of Bremen was holding the collateral which was determined to be the property of

the bank, and to which it had no right if the money on deposit was all "new money," and there was judgment against the town of Bremen that the bonds held as collateral be returned to the agent in charge of liquidating the bank. It therefore seems equitable that the town of Bremen should have been taxed with one-half of the costs below.

Judgment affirmed, with directions, however, that it be modified, and one-half of the costs below be taxed to the appellee town of Bremen. It is ordered that the costs of this appeal be taxed against the State Sinking Fund for Public Deposits.