# Brown *v.* Title Guaranty & Surety Company, Appellant.

*Principal and surety—Contracts—Surety company—Construction— Eminent domain—Land damages—Railroads—Conveyance of fee.*

1. The trend of all our modern decisions, federal and state, is to distinguish between individual and corporate suretyship where the latter is an undertaking for money consideration by a company chartered for the conduct of such business. In the one case the rule of strictissimi juris continues to prevail; with respect to the other, because it is essentially an insurance against risk, underwritten for a money consideration by a corporation adopting such business for its own profit, the courts generally hold that such a company can be relieved from its obligation of suretyship only where a departure from the contract is shown to be a material variance. The doctrine that a surety is a favorite of the law, and that a claim against him is strictissimi juris does not apply where the bond or undertaking is executed upon a consideration by a corporation organized to make such bonds or undertakings for profit. While such corporations may call themselves "surety companies" their business is in all essential particulars that of insurance. Their contracts are usually in the terms prescribed by themselves, and should be construed most strictly in favor of the obligee.

2. Land taken from an owner under the right of eminent domain for railroad purposes has no further practical value to the owner, in view of the rights of the railroad company in it and over it, and therefore, though only an easement is taken for the public use, no deduction is made, in practice, in the assessment of damages, for the reversionary right.

3. Where a surety company enters into a contract of suretyship with

a landowner to secure the payment to him of damages resulting from the taking of his land by a railroad under right of eminent domain, the contract stipulating that the surety company would pay him, if the railroad did not, the amount of damages to which he might be entitled in consequence of the location and construction of the railroad, after said amount had been agreed upon by him and the railroad company or assessed under the provisions of the statute, there is no material departure from the bond and the surety company is liable thereunder where an agreement is entered into between the landowner and the railroad company fixing "the value of the land and the damages to the property by reason of the location, and construction of the railroad through it" at a fixed sum, and providing for the conveyance of the land to the railroad company in fee.

Argued March 13, 1911. Appeal, No. 52, Jan. T., 1911, by Title Guaranty & Surety Co., from judgment of C. P. Bradford Co., Sept. T., 1908, No. 46, on verdict for plaintiff in case of John H. Brown v. Title Guaranty & Surety Co., and the Pittsburg, Binghamton & Eastern Railroad Company. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Assumpsit against principal and surety on a condemnation bond. Before FANNING, P. J.

The opinion of the Supreme Court states the case.

Judgment against the Pittsburg, Binghamton & Eastern Railroad Company for want of an appearance. Verdict and judgment for the plaintiff for $2,226 against the Title Guaranty & Surety Company by direction of the court with question of law reserved, on which final judgment was entered for the plaintiff on the question of law reserved. The Title Guaranty & Surety Company appealed.

*Error assigned* was in entering judgment for plaintiff and refusal of judgment for the surety company.

*Wm. A. Skinner,* with him *Wm. Maxwell* and *Stone & Brooks,* for appellant.—The defendant company never agreed to become surety for the payment to Brown of the purchase price of the land in fee simple.

The appropriation of land under the power of eminent domain does not give a fee simple estate therein in the absence of express statutory language to that effect, but only a right to use and occupy the land for the purpose for which it is taken: Lazarus v. Morris, 212 Pa. 128; Pittsburg & Lake Erie R. R. Co. v. Bruce, 102 Pa. 23; Pittock v. Telegraph Co., 31 Pa. Superior Ct. 589; Oakland Ry. Co. v. Keenan, 56 Pa. 198; Lance's App., 55 Pa. 16; Dilts v. R. R. Co., 222 Pa. 516; Hasson v. R. R. Co., 8 Phila. 556; Carter v. Turnpike Co., 22 Pa. Superior Ct. 162.

The modern doctrine announced in Young v. American Bonding Company, 228 Pa. 373, and cited by the lower court in the opinion filed does not work such a radical change in the law of suretyship as to make the surety liable in this case: Bauschard Co. v. F. & C. Co., 21 Pa. Superior Ct. 370; Hutchinson v. Woodwell, 107 Pa. 509; American Bonding Co. v. Inv. Co., 150 Fed. Repr. 17.

*T. S. Hickok*, of *Sechrist & Hickok*, with him *Lilley & Wilson*, for appellee.—If an entire lot is taken, its value at the time of taking determines the amount of the damages Junction R. R. Co. v. Philadelphia, 88 Pa. 424; Washington Cemetery v. Prospect Park & Coney Island R. R. Co., 68 N. Y. 591.

Where an easement is taken for a highway the compensation is generally estimated in practice at the value of the land itself: Penna. R. R. Co.'s App., 2 Walk. (Pa.) 506; Pennsylvania R. R. Co. v. Bruner, 55 Pa. 318; Tucker v. R. R. Co., 27 Pa. 281; Penna. R. R. Co. v. Heister, 8 Pa. 445; Penna. Schuylkill Val. R. R. Co. v. Paper Mills, 149 Pa. 18; Dilts v. Plumville R. R. Co., 222 Pa. 516; Pitts., Ft. Wayne & Chi. Railway v. Peet, 152 Pa. 488; Reading v. Davis, 153 Pa. 360; Junction R. R. Co. v. Boyd, 8 Phila. 224.

The defendant company is a concern for the purpose, among others, of assuming for pay risks of the nature it did assume in this case, and undoubtedly this risk in

question was upon a valuable consideration. The law
draws a distinction between such sureties and cases of
suretyship by private persons for the accommodation of
their friends: Young v. American Bonding Company, 228
Pa. 373.

OPINION BY MR. JUSTICE BROWN, July 6, 1911:

The route of the Pittsburg, Binghamton & Eastern
Railroad Company, as surveyed and laid out, ran through
lands of the appellee. He accepted its bond, with the
appellant as its surety, to secure the payment of the dam-
ages to which he might be entitled. The condition of the
obligation was as follows: "If the said Pittsburg, Bing-
hamton & Eastern Railroad Company shall pay or cause
to be paid unto the said John H. Brown such amount of
damages as the said John H. Brown shall be entitled to
receive, in consequence of the location and construction
of said railroad after the same shall have been agreed upon
by the parties or assessed by and under the provisions of
the acts of the general assembly, in such case made and
provided, whether the same exceed the amount of the pen-
alty in this bond mentioned, or not, without fraud or fur-
ther delay, then this obligation to be null and void; other-
wise to be and remain in full force and effect." Some
months after the bond was given to the appellee he and
the railroad company agreed, in writing, that the value of
the land and the damages to his property by reason of the
location and construction of the railroad through and over
it amounted to $5,500, and the agreement provided that
upon the payment of the said sum, with interest, he would
execute and deliver a deed to the railroad company for
the right of way and the land occupied, free and clear of
all incumbrances. The unsuccessful contention of the
appellant in the court below, renewed here, is that the
agreement of the appellee with the railroad company,
made without notice to or consent by it, released it from
liability on the bond, because "the amount agreed to be
paid by the railroad company included not only the dam-

ages contemplated by the bond, but, in addition thereto, the value of the land itself, which, for the consideration agreed upon, the obligee agreed to convey to the railroad company in fee simple."

The appellant is engaged in the business of becoming surety. It assumes its undertakings for a consideration and the rule of strictissimi juris which applies to an individual surety is relaxed as to it. "The trend of all our modern decisions, federal and state, is to distinguish between individual and corporate suretyship where the latter is an undertaking for money consideration by a company chartered for the conduct of such business. In the one case the rule of strictissimi juris prevails, as it always has; with respect to the other, because it is essentially an insurance against risk, underwritten for a money consideration by a corporation adopting such business for its own profit, the courts generally hold that such a company can be relieved from its obligation for suretyship only where a departure from the contract is shown to be a material variance. 'The doctrine that a surety is a favorite of the law, and that a claim against him is strictissimi juris does not apply where the bond or undertaking is executed upon a consideration by a corporation organized to make such bonds or undertakings for profit. While such corporations may call themselves "surety companies" their business is in all essential particulars that of insurance. Their contracts are usually in the terms prescribed by themselves, and should be construed most strictly in favor of the obligee:' 32 Cyc. 306, and the authorities there cited in support:" Young v. American Bonding Company, 228 Pa. 373. See also City of Philadelphia v. Fidelity & Deposit Company of Maryland, 231 Pa. 208, decided at present term.

The appellant's contract of suretyship with the appellee was that it would pay him, if the railroad company did not, the amount of damages to which he might be entitled in consequence of the location and construction of the railroad, after said amount had been agreed upon by him and

the railroad company or assessed under the provisions of the statute. The appellee and the railroad company agreed "that the value of the land and the damages to the property by reason of the location and construction of the railroad through it" amounted to $5,500. If the agreement had stopped there, it is to be assumed that the appellant would not be questioning its liability on the bond, for this agreement was simply what viewers would have been required to find and report, if they had been appointed to assess the damages. Sec. 11 of the general railroad Act of February 19, 1849, P. L. 79, provides that it shall be the duty of the viewers, inter alia, "to estimate and determine the quantity, quality and value" of the lands taken or occupied, and "to estimate and determine whether any, and, if any, what amount of damages has been sustained." The sole question to be determined is whether the agreement to convey the land in fee to the railroad company was a material departure from what was contemplated by the terms of the appellant's bond. If it was not, the appellant has not been prejudiced, and cannot, therefore, successfully contend against its liability.

If an entire lot of ground, and not merely a portion of it, is taken for railroad purposes, the value of the entire lot at the time of the taking determines the amount of damages: Spring City Gas Light Company v. Pennsylvania Schuylkill Valley R. R. Co., 167 Pa. 6. No allowance is made for any reversionary interest in the owner, for the fee, subject to the easements or right of way, is absolutely worthless: Junction Railroad Company v. Philadelphia, 88 Pa. 424. The interest acquired by a railroad company under the right of eminent domain, while not a fee, is not a mere easement or right of way. It is more. It is the right to the actual and exclusive possession of the property at all times and for all purposes except where a way crosses it: Pittsburgh, Ft. Wayne & Chicago Ry. v. Peet, 152 Pa. 488; Reading v. Davis, 153 Pa. 360; Dilts v. Plumville R. R. Co., 222 Pa. 516. "Such title is sometimes called an easement, but it is a right to exclusive possession, to fence in, to build

over the whole surface, to raise and maintain any appropriate superstructure including necessary foundations and to deal with it within the limits of railroad uses as absolutely and as uncontrolled as an owner in fee. . . . It would seem to be rather a fee in the surface and so much beneath as may be necessary for support, though a base or conditional fee, terminable on the cesser of the use for railroad purposes. But whatever it may be called it is in substance an interest in the land special and exclusive in its nature:" Mitchell, J., in Pennsylvania Schuylkill Valley R. R. Co. v. Reading Paper Mills, 149 Pa. 18. Land taken from an owner under the right of eminent domain for railroad purposes has no further practical value to the owner, in view of the rights of the railroad company in it and over it, and the records may be searched in vain to find where anyone has purchased as a thing of value the ultimate reversionary right of the owner of the fee upon the cesser of the railroad company's use of the land, and, therefore, it is that, though only an easement is taken for the public use, no deduction is made, in practice, in the assessment of damages for the reversionary right: Pierce on Railroads, 159. While authorities in support of this need not be multiplied, one directly in point may be cited. In Murray et al. v. County Commissioners, 53 Mass. 455, a turnpike road was changed into a public one, and the owners of the fee in the bed of the turnpike claimed that the land reverted to them on the discontinuance of the road by the turnpike company, and asked for the appointment of a jury to assess their damages as if the road were being originally laid out. In holding that they were entitled to no damages, Shaw, C. J., in delivering the opinion of the court, said: "The proprietors have already been paid for a perpetual easement over their land, for all the actual uses and purposes of public travel; a payment commonly estimated in practice at the value of the land itself."

The agreement between the railroad company and the appellee as to the amount of damages to which he was entitled was substantially such as is contemplated by the act

of 1849, and the covenant of the appellant was to pay the damages so ascertained and agreed upon. If the railroad company got a deed for the land, it acquired nothing in effect under the same that it had not acquired in the exercise of its right of eminent domain, and for what it so acquired the appellant agreed to pay, if it did not. In giving the deed the appellee did nothing to the prejudice of the appellant.

Both assignments of error are overruled and the judgment is affirmed.