AMERICAN SURETY CO. *v.* GREEK CATHOLIC UNION.

No. 401.   Argued January 22, 1932.—Decided February 15, 1932.

*Messrs. James M. Magee* and *Edmund W. Arthur* for petitioner.

*Messrs. Thomas Stephen Brown* and *Ralph C. Davis* for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The petitioner executed in favor of the respondent a bond in the sum of $100,000 conditioned upon the payment of pecuniary loss the corporation should sustain through the failure of one Kondor, its treasurer, faithfully to perform his duties as prescribed by the constitution and by-laws, or through his failure to keep intact and absolutely to account for all funds of the corporation. Kondor violated his duty by depositing with the Peoples State Bank of Johnstown, Pennsylvania, of which he was president, a sum greatly in excess of that permitted by the by-laws to be lodged in any one depositary. The bank became embarrassed and the state banking department instituted an investigation of its affairs. The amount on deposit to the credit of respondent was found to be over $241,000; and checks for $89,000 had been prepared for signature by Kondor as treasurer and were about to be issued. The representatives of the state determined that if these checks were issued and presented for payment they could not be met out of the bank's available resources and the institution would have to be closed and placed in the hands of an official liquidator.

News of the situation reached certain executive officers of the Union who lived in Pittsburgh, and they came to

Johnstown with their attorneys. They were informed that unless $100,000 additional cash was deposited with the bank the state would not permit the institution to honor the checks for $89,000. In this exigency counsel for the respondent called up an official of the petitioner at Pittsburgh and was advised by him that he had no authority to act in the premises. The only one to whom he could refer counsel was the general claim agent of the petitioner, who lived in New York. When reached by telephone he stated that he had no authority to pay or deposit $100,000, that such a matter would have to be referred to the executive committee. He was told that negotiations were under way to have another bank or trust company in Johnstown take over the assets and liabilities of the Peoples Bank, that a definite arrangement would have to be reached in less than twenty-four hours, and that the petitioner should have someone representing it come at once to Johnstown to join in the conferences on this subject. It does not appear that a promise was made that any such person could or would arrive in time to take part in the matter. This conversation took place on a Sunday morning. Late the same night a contract was entered into between the Peoples State Bank and the United States Trust Company of Johnstown whereby the latter assumed all the liabilities of the bank, except for its capital stock, in consideration of the conveyance of all its assets. The trust company was unwilling to make this agreement unless respondent would stipulate to leave with it $200,000 of the existing deposit with the bank for four years without interest. To assure the consummation of the transfer the respondent executed such an undertaking. The trust company proceeded with the liquidation of the affairs of the former bank, paid checks for some $41,000 of the deposit standing to the credit of the respondent, and at the expiration of the stipulated

four year period paid the respondent the remaining $200,000.

Respondent brought this action, alleging Kondor's breach of duty under the by-laws and his failure to keep intact the moneys entrusted to him as treasurer, and the consequent liability of petitioner on its bond. The declaration detailed the facts we have summarized, asserted due notice of breach to the surety, and its failure to meet the accruing liability; recounted the arrangement made in order to save loss, and claimed some $41,000 of interest lost to the corporation by reason of Kondor's default and the resulting agreement with the United States Trust Company made necessary thereby. The amount demanded was made up by showing that for four years $200,000 of the respondent's moneys had yielded no income, and that in conformity with the by-laws all of these funds would have been promptly invested except for Kondor's default; that the corporation normally earned five per cent. on investments, and had lost the opportunity to earn at that or any rate by reason of having to leave the $200,000 on deposit with the United States Trust Company without interest. The petitioner filed a statutory demurrer which was sustained by the District Court, whose decision was overruled by the Circuit Court of Appeals, 25 F. (2d) 31, and the case remanded for further proceedings. A trial on the merits resulted in a verdict and judgment for the amount claimed. The Circuit Court of Appeals affirmed. 51 F. (2d) 1050. This court granted certiorari.

At trial the court affirmed a point for charge presented by respondent, which permitted the jury to find whether the arrangement entered into between respondent and the United States Trust Company created a material variation of the surety's risk. Petitioner presented a point to the effect that the agreement with the trust company created a material variance in the contract of suretyship;

deprived the surety of recovery of salvage from the Peoples State Bank, and relieved the petitioner of the burden of showing that the variance was prejudicial. This was refused.

The parties agree that Kondor's conduct with respect to the deposit in the Peoples State Bank was a breach of his obligations and entailed a liability upon the bond; that the ascertainment of Kondor's defaults and notice thereof to the surety matured the surety's obligation to pay the loss sustained up to $100,000; that if petitioner had made such payment it would have been entitled to be subrogated to the rights of the respondent against the Peoples State Bank and Kondor, and that the course adopted by the officers of the Union deprived the surety of any opportunity to pursue the Peoples State Bank. In its brief and at bar respondent conceded that the telephone conversations with petitioner's employees on the eve of entering into the agreement with the United States Trust Company in no way affected the reciprocal rights and liabilities consequent on Kondor's defaults. These agreements and concessions narrow the issue presented to the question whether the arrangements made and approved by the officers of the obligee so varied the risk as to release the obligor from liability under its bond. The court below was of opinion the exigency which confronted the Union's officers was similar to one which an insured faces when a fire occurs, and the efforts at salvage ought not to be held a prejudicial variation of the hazard; that the burden rested upon petitioner affirmatively to prove that what was done increased its risk, and that the trial judge properly left this question as one of fact to the jury.

We cannot agree with this view. Assuming that respondent is right in its contention that the obligation here was in the nature of an insurance contract rather than one of strict suretyship (*American Surety Co.* v. *Pauly,* 170 U. S. 133, 144; *Guaranty Co.* v. *Pressed Brick*

*Co.,* 191 U. S. 416, 423), and that consequently a varia-tion of the risk does not *ipso facto* discharge the insurer, who in order to escape liability must prove that the change was material and prejudicial, it remains, as a practical matter, that what was done made proof of actual detriment impossible. If the bank had been closed, the surety would have remained liable for the penal sum named in the bond, and upon payment thereof would have been subrogated to the respondent's rights against the bank and the defaulting treasurer. Whether the resulting loss would have been more than $41,000 no one can tell. The state authorities, from such examination as they had made, were of the opinion that the depositary might pay from twenty to forty per cent. of its liabilities. It appears, however, that by the administration of the United States Trust Company the debts have been paid almost in full, and some assets of doubtful value remain to be converted. The action of the Union's officials has placed the question of probable prejudice due to the adoption of one of the two alternatives presented wholly in the realm of conjecture, and respondent now seeks to cast upon petitioner the burden of proving the consequences of an event which never in fact occurred.

The cases relied on by respondent have to do with an alteration of the terms of a principal obligation prior to any breach, and without the surety's consent. They address themselves to the question whether such a change discharges the indemnitor from liability consequent upon a breach. *Young* v. *American Bonding Co.,* 228 Pa. 373; 77 Atl. 623; *Philadelphia* v. *Fidelity & Deposit Co.,* 231 Pa. 208; 80 Atl. 62; *Brown* v. *Title Guaranty & Surety Co.,* 232 Pa. 337; 81 Atl. 410; *Philadelphia* v. *Ray,* 266 Pa. 345; 109 Atl. 689.

The instant case presents an altogether different situation. A breach had occurred which entailed a loss for which the bondsman was liable; and thereafter the ob-

ligee, without consulting the surety, entered into a wholly new arrangement relative to the recoupment of such loss. The claim is that this action was in fact in the interest of the surety and saved it money, and that if this is not true, the surety must assume the burden of proving what would have been the result of refraining from the attempt to minimize loss. We are referred to no authority in support of this position, and we think it unsound as applied even to the case of a paid surety company, which is often treated as an insurer merely.

Viewed in another aspect, the facts preclude a recovery. The cause and genesis of the loss was not one of the events specified in the bond on which payment was conditioned. The defaults for which the petitioner agreed to be liable were clearly defined. The bond guaranteed against fraud, dishonesty, forgery, theft, etc. of the treasurer; against his neglect faithfully to perform his duties as prescribed by the constitution and by-laws; against his omission to keep intact and absolutely to account for all the funds of the corporation; and against the failure of any bank or trust company in which he might deposit such funds. There is no evidence that the loss occurred through the fraud, dishonesty, or forgery of Kondor. It did not arise from the failure of the depositary, for the bank was not allowed to fail. The breach for which indemnity was to be afforded was Kondor's default in the performance of his duties and with respect to the protection of the funds of the corporation. There is nothing in the instrument which by the farthest stretch of construction can be said to undertake the payment of a loss due to an agreement of the corporation to substitute some other bank or trust company for the Peoples Bank. The voluntary action of the respondent in making an entirely new agreement, whereby in effect it loaned $200,000 to the United States Trust Company for four years without interest, caused the loss for which

the suit is brought. In view of the situation confronting it the Union thought well to incur the risk of losing that interest. It cannot now ask that the bond be rewritten to cover an event not therein specified or contemplated. Where an insured without the agreement of the insurer undertakes to substitute a new obligation under a new agreement with a third party in lieu of those arising from a breach of the officer whose fidelity is insured, thus substituting a new and different liability from any undertaken in the instrument of suretyship, and depriving the insurer of the right of subrogation, such conduct operates to discharge the obligation of the indemnity contract.

*Judgment reversed.*

MR. JUSTICE MCREYNOLDS is of the opinion that the judgment should be affirmed.