## ANTON ZVERINA REALTY CO. v. MARYLAND CASUALTY CO.

### No. 6184.

Circuit Court of Appeals, Sixth Circuit.
Oct. 6, 1933.

Rehearing Denied Nov. 17, 1933.

M. A. Vickery and M. L. Doering, both of Cleveland, Ohio (Vickery, Duffey & Vickery, of Cleveland, Ohio, on the brief), for appellant.

W. C. Keough, of Cleveland, Ohio (Mooney, Hahn, Loeser, Keough & Beam, of Cleveland, Ohio, on the brief), for appellee.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Action by appellant, an Ohio corporation and assignee of Anton Zverina, against appellee, a surety company and a Maryland corporation, for $10,000, the penalty of a surety bond issued by appellee to Zverina. Jurisdiction was based on diversity of citizenship and the requisite statutory amount in controversy. The court sitting without a jury made findings of fact and law and gave judgment for $2,314.03 with interest and costs. Claiming that it should have had judgment for the full amount of the bond, plaintiff appealed.

On or about June 9, 1924, Anton Zverina, owner of real estate at the southwest corner of High and East Second streets, Cleveland, Ohio, leased it for ninety-nine years to the High & East Second Street Realty Company. By the terms of the lease the lessee agreed to pay rental as follows: For the first five years beginning June 1, 1924, and ending May 31, 1929, $6,000 annually, payable quarterly in advance, on the first days of June, September, December, and March. For the second period of five years beginning June 1, 1929, $7,200 annually, payable as in the first period. The annual rental thereafter was to be $8,400.

The lessee also agreed to pay all taxes and assessments levied against the premises as the same became due and payable with 8 per cent. interest on all amounts for which it should default. The lessee further agreed to procure a surety bond to be kept in force for the protection and benefit of the lessor and this bond was executed June 9, 1924, by S. W. Fishman, attorney in fact for appellee at Cleveland, and was conditioned for the prompt payment of all rents, taxes, assessments, penalties, charges, insurance premiums, and obligations by the lessee thereunder. The bond was effective for one year from June 1, 1924, to May 31, 1925. The last clause of the bond read: "This bond may be continued from term to term at the option of the surety by the execution by the surety of continuation certificates extending its obligations hereunder for the term or terms of said continuation certificates."

On December 30, 1924, Anton Zverina conveyed the premises, subject to the lease, to appellant and at the same time assigned and delivered the surety bond to appellant. Five annual continuation certificates were executed by appellee: The first on May 1, 1925, for the period June 1, 1925, to May 31, 1926; the second on April 16, 1926, from June 1, 1926, to May 31, 1927; the third on April 29, 1927, from June 1, 1927, to May 31, 1928; the fourth on June 18, 1928, from June 1, 1928, to May 31, 1929; and the fifth, the one in dispute, on *September 20, 1929, from June 1, 1929, to May 31, 1930.*

The delay in the execution of the fifth certificate was due to the failure of the lessee to return promptly to appellee the application and the accompanying indemnity agreement which appellee had sent to the lessee for execution as a condition precedent to the issuance of the bond.

On May 31, 1929, the expiration date of the fourth continuation certificate, the lessee was in arrears $782.37 for taxes and penalties for the year 1927; and $1319.48 for taxes and penalties for the year 1928, for which sums with interest plaintiff recovered judgment. We are not concerned with these items.

On September 20, 1929, the lessee owed rental as follows: $800 on the December, 1928, installment; $1,500 on that of March, 1929; $1,800 on that of June, 1929; and $1,800 on that of September, 1929. Subsequent payments, however, were applied by appellant to the oldest arrearages, so that when the fifth certificate expired all rents prior to June, 1929, had been paid, but there was a balance of $300 due and unpaid on the

June, 1929, installment and default had been made in the three subsequent installments, making a total of $5,700 due and unpaid upon the rental account. Appellant was denied a recovery for these unpaid rentals.

In addition, appellant was denied recovery for certain taxes and penalties which had accrued against the lessee subsequent to June 1, 1929, and which appellant had been compelled to pay and was also denied interest upon these payments.

Judgment for these items was disallowed upon the court's finding that the fifth certificate was invalid. This conclusion was based upon the following fact findings by the court:

Anton Zverina was a stockholder and director in and president of the appellant corporation, and his son Andrew Zverina was also a stockholder and director and its vice president and general manager. E. H. Fishman was the general agent in charge of appellee's business in Cleveland and the final decision as to issuance of continuation certificates was always made by him. Andrew Zverina went to Mr. Fishman's office several times during the period between June 1, 1929, and September 20, 1929, and also spoke to Mr. Fishman over the telephone and on these various occasions asked him whether appellee was going to issue a continuation certificate for the year commencing June 1, 1929. Mr. Fishman would reply that a blank application and blank indemnity agreement had been mailed to the lessee for execution as required as a condition precedent to the issuance of a new certificate. Fishman did not on any of these occasions ask Zverina whether the lessee was behind in its rent payments, nor did Fishman and Zverina discuss whether the rent accounts and taxes were in default. Zverina did not disclose to Fishman on any occasion that the lessee was in default. Fishman had no knowledge thereof, nor did he or any officer or agent of appellee have any knowledge thereof; and Fishman would not have delivered the certificate had he known of the defaults.

There was ample evidence to support these findings, and we concur with the District Judge in his application of the law thereto.

The fifth continuation certificate was simply an extension of the original bond which provided indemnity for prospective defaults. This certificate upon its face provided for losses that might occur between the dates June 1, 1929, and May 31, 1930, but it was not executed until September 20 and not actually delivered until September 24, 1929. We do not think it was within the contempla-

tion of the parties that this certificate should operate as a guaranty of a payment of defaults that had already occurred between June 1 and September 20, to-wit, $300 upon the rental due on June 1, and the entire installment of $1,800 due on September 1. These defaults, occurring within the period mentioned, materially affected the ability or willingness of the lessee to meet its obligations and as a matter of good faith Andrew Zverina, in charge of appellant's affairs, should have disclosed them to appellee and we think that their concealment vitiated the contract. Brandt on Suretyship (3d Ed.) vol. 1, § 472; Black on Rescission and Cancellation of Contracts, vol. 1, § 40. The rule is clearly stated by Judge Story (Eq. Jurisp., 11th Ed., vol. 1, § 215), as follows: "Thus, if a party taking a guaranty from a surety, conceals from him facts which go to increase his risk, and suffers him to enter into the contract under false impressions, as to the real state of facts, such concealment will amount to a fraud, because the party is bound to make the disclosure; and the omission to make it, under such circumstances, is equivalent to an affirmation that the facts do not exist."

If the certificate stands, the responsibility of the surety is materially increased, to its prejudice (see Comstock v. Gage, 91 Ill. 328, 336), and it unwittingly becomes guarantor for the payment of an existing default rather than surety for the performance of a contingent obligation.

The rule, that an obligee on a surety bond is not bound to disclose facts not asked for, should not apply to a situation where the concealed facts are so materially vital. The facts withheld by Andrew Zverina were highly relevant to the transaction and justify the inference that Zverina knew that if he should disclose them the risk would very probably be rejected. See Penn Mutual Life Ins. Co. v. Mechanics' Savings Bank & Trust Co., 72 F. 413, 435, 38 L. R. A. 33 (C. C. A. 6). Their noncommunication was a fraud in law. State v. Sooy, 39 N. J. Law, 135, 143. Compare Stipcich v. Metropolitan Life Insurance Co., 277 U. S. 311, 316, 48 S. Ct. 512, 72 L. Ed. 895. The numerous authorities cited in the briefs present a striking contrariety of judicial opinion, but we need not discuss them. Each case must depend upon its own peculiar facts and circumstances. A somewhat parallel case, however, is Park Paving Co. v. Kraft, 262 Pa. 178, 105 A. 39, wherein it was held that where a contractor's bond indicated that it was given to insure the performance of work to be done and not the guaranty of an existing indebtedness or fixed liability, and where, at the time of the execution of the bond, the obligee knew that the contractor was in default and the surety was ignorant thereof, good faith required that the real facts should be disclosed to the surety and the bond was declared void because this was not done.

Judgment affirmed.