## TOWN OF HAMDEN v. AMERICAN SURETY CO.*
### No. 42.

Circuit Court of Appeals, Second Circuit.

Dec. 20, 1937.

MANTON, Circuit Judge, dissenting.

*Writ of certiorari denied 58 S.Ct. 647, 82 L.Ed. ——.

Cummings & Lockwood, of Stamford, Conn. (Mark W. Norman, Raymond E. Hackett, and Francis K. Norman, all of Stamford, Conn., of counsel), for appellant.

Edwin A. Clark, F. Raymond Rochford, and Curtiss K. Thompson, all of New Haven, Conn., for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is an action by the Town of Hamden to recover the penalty of an official bond for $65,000 executed by Carle Van de Bogart, treasurer of the town, as principal, and by the defendant as surety. The bond was conditioned upon the treasurer's faithful performance of all the duties of his office for a term beginning October 5, 1931. The action was brought in a state court and was removed to the District Court on the ground of diverse citizenship. By stipulation a jury was waived. The case was tried to Judge Hincks, who made general findings in favor of the plaintiff on the first, second, and fourth counts of the complaint. No issues were framed upon the third count, a demurrer thereto having been sustained. From the resulting judgment the defendant has appealed.

On October 5, 1931, Van de Bogart was re-elected treasurer of the Town of Hamden for his fourth successive two-year term. To qualify for this term of office he gave the bond in suit, upon which the defendant was surety. At the close of business on December 16, 1931, he had funds of the town aggregating some $324,000 on deposit in various accounts in the Hamden Bank & Trust Company, of which he was then, and had long been, an officer and director. On December 17, 1931, the bank was closed by order of the state bank commissioner, and thereafter a receiver was appointed by the state court. Van de Bogart resigned as town treasurer on December 29, 1931, and subsequently was adjudicated a bankrupt. The present action was begun in January, 1933, to recover from the surety on the town treasurer's bond for losses sustained by the town through the closing of the bank, which has never reopened. The first count charged Van de Bogart with failing to account for and pay over to his successor $324,728.18 of the money received by him as treasurer. The second count charged that the money which he had on deposit with the bank at the time of its closing exceeded 30 per cent. of its combined capital, surplus and undivided profits, in violation of section 512, Conn.Gen.Stats.1930 Revision, which imposes such a limitation upon bank deposits by public officers. The fourth count charged Van de Bogart with making a deposit of $50,527.40 of town funds shortly before the bank's closing and solely for the purpose of improving its unsound financial condition. The defendant's answer to the complaint set up separate and special defenses to each of the counts. The answer was attacked by a motion to expunge portions thereof and by demurrer. This appeal raises only the correctness of the District Court's rulings on such motion and demurrer.

The first subject to be considered, since it attacks the validity of the bond, is the third defense, to which a demurrer was sustained. This defense alleged that during his prior term of office as town treasurer Van de Bogart had maintained in the bank deposits greatly in excess of the legal limit; that this fact was known to the selectmen throughout 1931 and was disclosed in the annual report filed by the treasurer in October, 1930, and accepted at a town meeting on November 24, 1930; that a majority of the board of selectmen were directors of the bank and knew that its resources were insufficient on October 5, 1931, to permit withdrawal of the town's funds, or the excessive portion thereof, then on deposit in the bank; that the amount of the bond required of the treasurer was increased from $20,000 to $65,000; and that the defendant executed and delivered said bond as surety without knowledge of the foregoing facts. In brief, the contention of the defendant is that the failure of the selectmen to disclose these facts when they accepted the treasurer's bond amounted to a fraudulent concealment of facts material to the surety's risk and rendered the bond voidable from its inception.

In our opinion, the demurrer was properly sustained. Under the Connecticut statutes the town treasurer must annually give a bond with surety in a form approved by the tax commissioner and in an amount fixed by the selectmen. The bond must be procured from a surety company of good standing, approved by the selectmen, and the premium thereon is paid by the town treasurer upon order of the selectmen. Sections 303, 355, Conn.Gen.Stats. 1930 Revision. In fixing at $65,000 the amount of the bond for the year beginning October 5, 1931, the selectmen of the Town of Hamden acted upon a suggestion of the tax commissioner which was sent to all Connecticut towns with a view to having the amounts of such bonds bear a more nearly uniform ratio to the amount of taxes levied. So far as appears from the pleadings, the bond may have been tendered by the treasurer with the surety's signature already affixed; all that the selectmen were required to do by the statute was to approve the "good standing" of the surety company and to order payment of the premium. There is no allegation that any representative of the defendant was present when the bond was delivered or that any information was requested from the town as to the treasurer's conduct during his earlier terms or as to the condition of the Bank in which he had kept deposits. The treasurer's 1930 report which disclosed the excessive deposits during his prior term was a matter of public record. Sections 320, 356, Conn.Gen.Stats. 1930 Revision. Under these circumstances it would be an extreme position to hold that the town was guilty of fraudulent concealment in accepting the tendered bond without hunting up some agent of the surety and informing him of facts material to the surety's risk. Such a position is not supported by the authorities. Watertown Savings Bank v. Mattoon, 78 Conn. 388, 62 A. 622, was an action against the surety upon a bond required by statute of the treasurer of a savings bank. The surety pleaded that the directors of the bank fraudulently concealed from the surety knowledge that the treasurer had previously embezzled funds of the bank. A demurrer to this defense was sustained, Chief Justice Torrance saying at page 393 of 78 Conn., 62 A. 622, 624:

"There is nothing in the answer to show that the sureties signed the bond at the request of the directors, or in the presence of the directors, or that the sureties applied to the directors for any information concerning the character or conduct of Mattoon. In short, there is nothing to show that the directors knew anything about the bond or the sureties thereon until it was presented to them for acceptance. It does not appear that the directors had any opportunity to disclose until after the bond was executed and delivered to the bank."

In Magee v. Manhattan Life Ins. Co., 92 U.S. 93, 99, 23 L.Ed. 699, it was held that the creditor was under no duty to search for the surety and warn him of the danger of the step he was about to take. Because of the public interest involved and the limited authority of an official board whose duty is merely to accept the bond, this rule is particularly applicable to the bonds of public officers. See Town of Winthrop v. Soule, 175 Mass. 400, 56 N.E. 575; Hogue v. State, 28 Ind.App. 285, 62 N.E. 656; Frownfelter, Myers et al. v. State, 66 Md. 80, 5 A. 410; Cawley v. People, 95 Ill. 249; U. S. Fidelity & Guaranty Co. v. Commonwealth, Ky., 104 S.W. 1029, 31 Ky.Law Rep. 1179; County of Pine v. Willard, 39 Minn. 125, 39 N.W. 71, 1 L.R. A. 118, 12 Am.St.Rep. 622; City of Luverne v. Skyberg, 169 Minn. 234, 211 N.W. 5, 6; City of Hallettsville v. Long, 11 Tex.Civ. App. 180, 32 S.W. 567; Independent School District v. Hubbard, 110 Iowa 58, 81 N.W. 241, 80 Am.St.Rep. 271. The facts alleged in the defendant's answer were not sufficient to establish an affirmative duty on the part of the town or the selectmen to warn the surety of the treasurer's prior violation of section 512 or of the shaky condition of the bank in which town funds had been deposited. Hence there was no error in sustaining the demurrer.

■ Complaint is made of the court's action in sustaining the demurrer to the fourth defense, which set up what is referred to as the subrogation defense. This alleged that the bank closed with town funds amounting to $324,728.18 on deposit therein; that on May 25, 1932, the town filed with the bank's receiver a "claim and reclaimer," asserting that the town funds, having been illegally received by the bank, were held by it as trustee ex maleficio; that thereafter the town took no steps to have its claim and reclaimer adjudicated, but consented to the payment of dividends to itself and other depositors as common creditors, and that the remaining assets in

the commercial department of the bank were insufficient to pay to the town the balance remaining due upon its deposit. In short, the defense is that the town waived its claim to preferential payment and thereby impaired the surety's right of subrogation. Obviously, there could not be, and is not, any allegation of payment by the surety in this defense. The principle is too well established to require citation of authority that in general a surety must pay before rights of subrogation accrue. But the appellant contends that two recent decisions by the Supreme Court have established that payment is not an inflexible condition precedent, at least on the question of what conduct by the creditor will discharge a surety. American Surety Co. v. Greek Catholic Union, 284 U.S. 563, 52 S. Ct. 235, 76 L.Ed. 490; Aetna Casualty & Surety Co. v. Phoenix Nat. Bank & Trust Co., 285 U.S. 209, 52 S.Ct. 329, 76 L.Ed. 709. In the former case the obligee, immediately after notifying the surety of the loss and without its consent, participated in an arrangement whereby assets to which the surety might have resorted as subrogee upon payment of the loss were put beyond its reach. In the Aetna Case the surety company had undertaken to indemnify a bank against loss through payment of forged checks. The surety company admitted its liability, if the bank was not authorized to charge the depositor with the loss because of the latter's negligent delay in giving notice of the forgeries, and it offered to defend the bank against the depositor's claims and requested the bank to demand reimbursement from prior endorsers. Despite these requests, the bank gave up any rights it might have against indorsers and credited the depositor's account with the disputed amount. Justice Stone said at page 216 of 285 U.S., 52 S. Ct. 329, 332, 76 L.Ed. 709:

"As the liability had already attached on payment of the checks, the bank might have sued its indemnitor at once, and was not called on to defend itself against claims of its depositor or to prosecute its own claims against the endorsers. Royal Insurance Co. v. Stinson, 103 U.S. 25, 26 L.Ed. 473. But it could not, as it has sought to do, retain its indemnity and withhold from its indemnitor the privilege of contesting or making such claims. See American Surety Co. v. Greek Catholic Union, 284 U.S. 563, 52 S.Ct. 235, 76 L.Ed. 490."

In Royal Insurance Co. v. Stinson, cited in the above quotation, it was said, at page 27 of 103 U.S., 26 L.Ed. 473, that the creditor is not bound to take any active steps to realize the fruits of a collateral, or to keep it from expiring, unless the insurance be first paid and notice be given of the insurer's desire to be subrogated to the creditor's rights. The surety's answer alleges no request that the town's claim be prosecuted, and says nothing as to the date of the receipt of dividends which are supposed to have affected a waiver of the claim. Although the present action was brought in January, 1933, the surety's answer was not filed until March, 1935. So far as appears, the surety might, long before filing its answer, have taken over prosecution of the claim unimpaired by any action of the town. Unlike the sureties in the Supreme Court cases relied upon by the appellant, the surety in the case at bar had ample opportunity to take over the claim; the privilege of prosecuting it was not withheld. The defense must, therefore, rest on a contention that, despite the surety's opportunity to prosecute the claim and despite its denial of all liability on the bond, the surety was discharged by the town's releasing a valuable right against the bank. The alleged release is predicated upon the receipt of common dividends by the town and its consent to the payment of common dividends to other creditors of the bank.

■ Receipt by the town of a less sum than that to which it was entitled could not effect a valid release of its priority claim. State ex rel. Symons v. Wells County Bank, 208 Ind. 543, 196 N.E. 873, 103 A.L.R. 611; Alleman v. Sayre, 79 W.Va. 763, 91 S.E. 805, L.R.A.1917D, 1002; First National Bank v. Bunting & Co., 7 Idaho 27, 59 P. 929, 1106.

■ Consenting to the receiver's payment of dividends to other creditors could have no greater effect than to estop it from claiming that the dividends paid were property held in trust for it. So far as the town can trace its deposits into the possession of the receiver, we see no reason why its priority claim may not still be maintained.

■ Unless it appears that, if the town had not consented to the payment of dividends to other depositors, the bank could have paid the town a sum greater than the nonbonded part of its deposit of

$324,728.18, the surety would not be in a position to complain of the town's conduct, as it would sustain no damage therefrom. The deposit was bonded only to the extent of the surety's obligation, $65,000. Until the town had 'recovered in full its loss, both bonded and nonbonded, the surety could not by claiming subrogation compete with the town in seeking reimbursement from assets of the Bank. It is settled that a surety liable for only part of a debt does not become subrogated to collateral or to remedies available to the creditor unless he pays the whole debt or it is otherwise satisfied. American Surety Company v. Westinghouse Electric Company, 296 U.S. 133, 56 S.Ct. 9, 80 L.Ed. 105; Jenkins v. National Surety Company, 277 U.S. 258, 48 S.Ct. 445, 72 L.Ed. 874; United States v. National Surety Company, 254 U.S. 73, 41 S.Ct. 29, 65 L.Ed. 143; U. S. Fidelity & Guaranty Co. v. Union Bank & Trust Co., 6 Cir., 228 F. 448. The answer does not allege that the debt would have been satisfied if the town had not consented to the payment of dividends to other creditors; hence the demurrer to the subrogation defense was rightly sustained.

Finally, it is contended that during his prior term of office Van de Bogart had made deposits of town funds which could not be withdrawn during his last term because of the financial condition of the bank, and consequently the loss for which the defendant has been held liable is one that occurred before the date of the bond in suit. The legal principle that a surety on a bond cannot be held for a loss occurring before the bond was executed must be conceded. The plaintiff does not dispute it, but says that the question of when the loss occurred is not presented on this appeal. We think this is true.

Paragraph 4 of the first count alleged that Van de Bogart held the office of treasurer and "received into his care and custody money belonging to said town" until his resignation on December 29, 1931. The first defense to the first count admitted that he held said office until December 29, 1931, and denied the other allegations. Hence the issue was presented whether he did receive money of the town for which he failed to account to his successor in office. The same issue was raised by the first defense to the second count by the allegation in paragraph 3 thereof that Van de Bogart, "as such treasurer, at no time subsequent to his election on said October 5, 1931, ever received into his care and custody as such treasurer" the amounts stated in amended paragraph 3 of the second count. Issue was joined by the plaintiff's reply. Upon the issues thus framed the court made a general finding in favor of the plaintiff, and awarded judgment for the full penalty of the bond on each of the first and second counts. What evidence supported the finding is not before us, since no bill of exceptions was brought up; but certainly the issue was tried as to what money of the town was received by the treasurer during the term of the bond in suit. The appellant's contention that it was deprived of an opportunity to prove that the wrongful acts to which the loss of the town is attributable took place during the treasurer's prior term of office is clearly unfounded.

Nevertheless, the appellant strongly urges that the defense that the loss actually occurred before the date of the bond in suit is before us on this appeal because such an allegation was advanced in the third defense in connection with the charge of fraud. If such allegation be viewed as asserting this defense independent of the question of fraud, it is a sufficient answer that the same issue was presented by the first defense to the first count and the first defense to the second. Even if it be assumed that it was error to sustain the demurrer to the third defense viewed as alleging merely that the loss occurred prior to the date of the bond, it was a harmless error, since the same question was comprehended under the issues submitted to trial under the other defenses and the judgment awarded on each of the first two counts exhausted the bond.

Judgment affirmed.

MANTON, Circuit Judge (dissenting).

This suit is on a bond executed by the appellant for the faithful performance of duties by Van de Bogart, as treasurer of the Town of Hamden, Conn., during his term of two years commencing October 7, 1931. Since October, 1925, he served as treasurer for three terms, giving a bond fixed by the selectmen of the town for $20,000. Conn.General Rev.Stat.1930, §§ 303, 355. When Van de Bogart's last term expired, he had on deposit with the Hamden Bank & Trust Company, of which he was vice president, moneys of the town substan-

tially in excess of 30 per cent. of the capital, surplus and undivided profits of the bank. The amount on deposit was $396,957.79 and the capital surplus and undivided profits were $341,111.73; the excess being $210,000. This was a violation of the laws of Connecticut (section 512, Rev.Stat.). The majority of the selectmen were directors of the bank, as was the collector of taxes and the town clerk. The annual report of the treasurer, filed with the town for the year ending October 5, 1931, disclosed the excessive deposit, and this was approved by the town meeting on November 30, 1931. At the close of business October 5, 1931, the value and amount of resources of the bank were insufficient to meet the amount of the deposit of the town or the excess over 30 per cent. of the capital, surplus or undivided profits, had the treasurer attempted to withdraw it. The bank, being unable to meet his demand, would have been forced into liquidation.

Under these circumstances, when he took office October 7, 1931, the selectmen demanded an increase of the bond from twenty to sixty-five thousand dollars, which was furnished to the town by the appellant on the application of the treasurer. The facts of overdeposit and the condition of the bank were not made known to the appellant. These facts were pleaded in the answer as a defense, charging that the selectmen, as a fraud on the appellant, directed the increase in the amount of the bond over the previous years. A demurrer to this defense was sustained.

The court below held that the selectmen were not under any duty to the appellant to make known these facts. The court was required to take judicial notice of the Connecticut statute requiring the selectmen to fix the amount of the bond. In such matters a town can only act through its agents, who, in this instance, are provided for by statute. Any matters connected with setting the amount of the bond and its acceptance are within the scope of the authority of the selectmen. The failure to disclose the breach of duty by the treasurer and the insolvent condition of the bank are sufficiently pleaded in the third defense. The facts showing excess deposits were in the treasurer's report at the town meeting as required by the statutes (Gen.Statutes Conn. § 356), and the proceedings of this meeting must be kept by the town clerk as a public record (Gen.Statutes Conn. § 320). While there is no duty to disclose matters which could be found out by the exercise of reasonable diligence (Andrus v. St. Louis Smelting Co., 130 U.S. 643, 647, 9 S.Ct. 645, 32 L.Ed. 1054), there is a duty of disclosure by the selectmen, here, when they knew of the existing default due to the wrongful acts of the treasurer in making these overdeposits. Although the overdeposit was a matter of public record, the default was not. The fact of the bank's insolvency was known to the majority of the selectmen, but probably could not have been discovered by the surety company at the time they wrote the new bond. It would require an extensive examination of the condition of the bank to be so informed.

Since the allegations of the answer must be considered admitted on demurrer, that the selectmen were aware of the facts and they fixed the amount and accepted the new bond with such knowledge, they were under a duty to disclose the facts to the appellant.

Watertown Savings Bank v. Mattoon, 78 Conn. 388, 62 A. 622, was a case in which the directors of the savings bank accepted a bond for the treasurer of the bank whom they knew had embezzled the funds. The court held there was no fraudulent concealment because the statute required the treasurer to obtain the bond and he did this independent of any action by the directors. But in the instant case, the selectmen were intimately connected with the bank and they were required by statute to fix the amount of the bond; they accepted a bond for which they had fixed a higher sum without disclosing the factual situation as to the bank's insolvency. This amounts to fraudulent concealment of material facts. See Griswold v. Hazard, 141 U.S. 260, 11 S.Ct. 972, 35 L.Ed. 678; Copper Process Co. v. Chicago Bonding & Ins. Co., 3 Cir., 262 F. 66, 8 A.L.R. 1477; U. S. v. Fidelity & Deposit Co. of Maryland, 2 Cir., 224 F. 866; Phillips v. United States Fidelity & Deposit Co., 200 App.Div. 208, 193 N.Y.S. 467; Howe Machine Co. v. Farrington, 82 N.Y. 121; Franklin Bank v. Cooper, 36 Me. 179.

The appellant would not have assumed the obligation of the bond if it had known these facts. They were material facts which fair dealing as well as duty required should have been disclosed before accepting the bond. See Zverina Realty Co. v. Maryland Casualty Co., 6 Cir., 67 F.2d 292; Williston on Contracts (1936) § 1249.

The demurrer to this defense should have been overruled. Accordingly, the judgment should be reversed.