958 F.2d 381
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 CASCADE ENERGY AND METALS CORPORATION,
Plaintiff-Counter-Claim-Defendant-Appellee,
v.
RESOURCE CONCEPTS, INC.; Harold Masunaga; Marion Harada;
Ukio Ayabe; and George C. Pingree,
Appellants-Cross-Appellees,
and
Jeffery G. Banks; Kenneth Caldwell; Elmer J. Davis; Roger
A. Mann; Mann Caldwell Partnership; Robert A. Nickerson;
Peter P. Samarin; Herbert W. Stoltenberg; Edwin
Stoltenberg; Patricia Stoltenberg; Delford R. Ashley;
George Slater; Patricia Slater; Robert Doub; Sam
Hambarian; Alyce Hambarian; Lionel Ascher; Coastal
Computer Investments, a California partnership; Harmatz and
Hodowski; Chris Waugh; A.C. Nejedly; R.E. Donahey; Grace
V. Duncan; Elliot Weinberg; Bernard Hodowski; Samuel
Harmatz; David G. Henry; H.E. Moses,
Defendants-Cross-Claimants-Appellees, Cross-Appellants,
W. David Weston; Telegraph Mine Limited, a partnership;
Rex Montis Silver Company; Telegraph Mine Joint Venture;
Gold Technics, Ltd., a limited partnership; Interphase
Corporation; James F. Peters, as Trustee of the Gnolaum
Unitrust, Cross-Claim-Defendants-Appellees.
 Nos. 90-4185, 90-4208 and 90-4209.
 United States Court of Appeals, Tenth Circuit.
 March 20, 1992.
 
 Before TACHA, BALDOCK and EBEL, Circuit Judges.
 ORDER AND JUDGMENT*
 BALDOCK, Circuit Judge.
 
 
 1
 This case is a continuation of the morass of litigation that we reviewed in Cascade Energy & Metals Corp. v. Banks (Cascade I), 896 F.2d 1557, 1568-69 (10th Cir.1990), cert. denied, 111 S.Ct. 138 (1990). In that case, Cascade Energy & Metals Corporation (Cascade), owner and operator of the Telegraph Mine claims in San Bernardino County, California, brought diversity claims in Utah federal district court against certain joint venture partners (Partners) for unpaid project costs. Partners counter-claimed,[1] alleging breach of fiduciary duties. After a bench trial, the district court granted judgment on September 16, 1985 in favor of Partners, finding that Cascade breached its fiduciary duties and brought its claims for project costs in bad faith. The portion of the judgment at issue in this appeal totalled $335,449.68--$70,449.68 as restitution for wrongfully collected project cost assessments, and $265,000 for attorneys' fees expended in defending the project costs claim. The court also granted an equitable lien on the Telegraph Mine claims as security for the judgment. In order to stay execution of the judgment pending appeal, Cascade requested Sureties[2] to post cash, letters of credit and real property mortgages as security for, or in lieu of, supersedeas bonds. See Fed.R.Civ.P. 62(d). After several hearings the Court approved of Cascade's supersedeas bond arrangement with Sureties and stayed execution of the judgment pending appeal.
 
 
 2
 On February 16, 1990, we affirmed the judgment and remanded for resolution of other issues. Cascade I, 896 F.2d at 1583-84. Given our affirmance, Partners as judgment-creditors moved the district court to disburse the funds deposited in lieu of supersedeas bonds and to enforce liability on the supersedeas bonds. See Fed.R.Civ.P. 65.1 ("surety's liability may be enforced on motion without the necessity of an independent action"). Sureties defended, seeking release from the obligation by claiming that Partners, as judgment-creditors at the supersedeas bond hearings, misrepresented or failed to disclose facts material to Sureties' risk. On October 22, 1990, the district court ordered disbursement of funds and enforcement of liability on the supersedeas bonds, but, recognizing a lack of "candor" by Partners at the supersedeas bond hearings, the court granted Sureties an equitable lien to take relative priority over any lien that Partners might have in the Telegraph Mine claims. See Cascade Energy & Metals Corporation v. Banks, No. C-82-1223J, unpub. order (D.Utah Oct. 22, 1990); Appellees' supp. app. at 410 (August 2, 1990 hearing transcript in which Court refers to lack of candor).
 
 
 3
 On appeal from the October 22, 1990 order, Sureties contend that the district court erred in failing to consider their defenses. Partners cross-appeal, contending that the court erred in granting Sureties the equitable lien on the Telegraph Mine claims.[3] We remand for proceedings consistent with this order and judgment.
 
 
 4
 I. Misrepresentation or Failure to Disclose Material Facts.
 
 
 5
 The underlying lawsuit and appeal centered on the Telegraph Mine claims in San Bernardino County, California. Early in 1983, after Partners filed their cross-claim in federal court, they recorded a lis pendens against the Telegraph Mine claims. This lis pendens was at issue in the supersedeas bond hearings that took place after the September 16, 1985 district court judgment. Partners were agreeable to a stay in execution of the judgment, but they were reluctant to release the lis pendens on account of $1.2 million in alleged mine improvements for which they expected to obtain recision on appeal. Appellants' 1st App. at 56 (May 20, 1986 supersedeas bond hearing transcript). Cascade, on the other hand, had arranged for $400,000 in supersedeas bonds and other funds in lieu of supersedeas bonds to cover the judgment for improper project cost assessments and attorneys' fees. Id. at 55. The court gave Partners the choice of posting a cross-bond for $1.2 million in order to maintain the encumbrance or accepting the $400,000 in supersedeas bonds and funds and removing the encumbrance. Id. at 58.[4] Partners chose the $400,000 arrangement and agreed to release the lis pendens. Id. But Partners did not disclose that they had previously recorded two judgment liens--the first on October 15, 1985, and the second on April 10, 1986--against the Telegraph Mine claims.
 
 
 6
 Sureties claim that they agreed to the supersedeas bond arrangements in reliance on representations that the Telegraph Mine claims would be free of encumbrance. They were interested in unencumbered property so that Cascade could obtain refinancing, begin mine operations, and pay down its obligation to Sureties in the event Sureties were required to pay the judgment. See Appellants' 2d app. at 76-80 (Masanuga Affidavit); id. at 111 (Ayabe Affidavit). In April 1987, Cascade filed for Chapter 11 bankruptcy. As part of the reorganization plan, Cascade agreed to refinance the mine operations with premium gold bonds. Sureties contend that Cascade's attempted premium gold bond offering collapsed because Partners refused to release the "secret recordings" of October 15, 1985, and April 10, 1986, even though their judgment was secured by the supersedeas bonds. Had they been given proper notice of these recordings, which later were held invalid in an adversary proceeding in bankruptcy court,[5] they contend that they would not have entered the supersedeas bond undertakings. Instead, they have now paid the judgment and are left with only the recourse of unsecured creditors to Cascade's bankruptcy estate.
 
 
 7
 A surety has a defense to liability if the creditor misrepresents or fails to disclose facts that are material to the risk undertaken by the surety. The Fifth Circuit has summarized the rule as follows:
 
 
 8
 the suretyship bond is fragile, easily broken by the conduct of the creditor. The validity of the contract may be vitiated ab initio by the creditor's actions during its creation. A creditor who, during negotiations, actively and fraudulently conceals pertinent facts cannot then turn to the surety for reimbursement. [ Magee v. Manhattan Life Ins. Co., 92 U.S. 93, 98 (1875) ]; Town of Hamden v. American Surety Co., 93 F.2d 482, 484 (2d Cir.1937). Similarly, the surety has a defense to liability if, before the obligation is undertaken, the creditor knew of facts unknown to the surety and which he had reason to believe were not known to the surety, the facts materially increased the obligor's risk and the creditor had adequate time to disclose them but failed in his responsibility. Restatement of Security, § 124 (1941) ... Furthermore, assuming the suretyship agreement was initially enforceable, the creditor may thereafter lose the right to demand its coverage if he impairs any collateral to which the surety could look for reimbursement. United States v. Continental Casualty Co., 512 F.2d 475, 478 (5th Cir.1975); Restatement of Security, § 132 (1941).
 
 
 9
 St. Paul Fire & Marine Ins. v. Commodity Credit Corp., 646 F.2d 1064 (5th Cir.1981).
 
 
 10
 We have recognized the defenses articulated in St. Paul Fire & Marine Ins. See, e.g., Rocky Mountain Tool & Machine Co. v. Tecon Corp., 371 F.2d 589, 597-98 (10th Cir.1966). However, we have clearly stated that it is the surety's burden to establish active misrepresentations or material omissions on the part of the creditor. Id. at 597. In this case, Partners contend that Sureties did not meet this burden, and they urge us to apply a clearly erroneous standard of review to the district court's finding to this effect. Appellees' brief at 10 ("The court found on the basis that the judgment creditors did not breach a duty of disclosure to the sureties."). This bold assertion is troubling in light of a review of the hearing transcripts, for the court clearly made no such finding. On the contrary, the court explicitly refused to consider Sureties' defenses and made no ruling on their repeated requests for an evidentiary hearing. See, e.g., Appellants' supp. app. at 297 (August 1, 1990 hearing transcript in which the court states: "Well, that's not before me. The enforcement question is before me, and I'm not going to get involved in some ancillary Lawsuits."). The court instead attempted to do equity between the parties by enforcing the supersedeas obligations but granting Sureties an equitable lien in the Telegraph Mine claims.
 
 
 11
 Clearly the court was troubled by Partners' failure to disclose the judgment lien recordings. Otherwise it would not have granted the equitable lien in order to vindicate "the policy of absolute candor in Court." Id. at 328 (August 2, 1990 hearing transcript). But it did not rule on Sureties' defenses, and the effect of the nondisclosure is impossible for us to review given the lack of district court findings and the jumbled state of the record. We therefore remand for further proceedings. On remand, the district court is instructed to make findings regarding the effect of the nondisclosure of the judgment lien recordings. The court should determine whether Partners actively concealed pertinent information during the May 1986 supersedeas hearings. See St. Paul Fire & Marine Ins., 646 F.2d at 1072-73. Also, the court should find whether the recordings amounted to material nondisclosure under the standard set forth in the Restatement of Security § 124 (1941). See St. Paul Fire & Marine Ins., 646 F.2d at 1073 ("Similarly, the surety has a defense to liability if, before the obligation is undertaken, the creditor knew of facts unknown to the surety and which he had reason to believe were not known to the surety, the facts materially increased the obligor's risk and the creditor had adequate time to disclose them but failed in his responsibility.") (citing Restatement § 124). Depending on the findings, the court may fashion any necessary relief.
 
 
 12
 II. Equitable Lien.
 
 
 13
 On cross-appeal, Partners challenge the equitable lien that the district court granted Sureties. Partners failed to mention, however, that in the August hearings they suggested the lien. See Appellants' supp. app. at 312. We refuse to entertain this cross-appeal because Partners brought the error, if any, upon themselves. See Neu v. Grant, 548 F.2d 282, 287 (10th Cir.1977). However, the equitable lien should of course be vacated on remand if the district court finds that Sureties are not liable on the supersedeas obligations.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Partners also brought third-party claims against other promoters of the gold mine. See Cascade I, 896 F.2d at 1566 n. 9. The nature of the partnership and the resulting lawsuit and appeal was exceedingly complex. See id. at 1563 (organizational chart); id. at 1567-68 (issues on appeal). For the sake of efficiency, we have limited our discussion of the background to those matters necessary for a proper understanding of this appeal
 
 
 [2]
 The Sureties are the appellants in this case. Although none was named in the underlying lawsuit, all were affiliated in some manner with Cascade, and three of the Sureties--Harold Masunaga, Marion Harada and Ukio Ayabe--filed an amicus brief on behalf of Cascade in the prior appeal. See Cascade I, 896 F.2d at 1562 n. 3
 
 
 [3]
 Partners also have moved for dismissal for lack of finality. Partners did not make the motion in a timely fashion and have not explained the delay. See 10th Cir.R. 27.2.1 (party required to show cause if motion not made within 15 days of the filing of the notice of appeal). In any event, the motion is meritless and is hereby denied. Sureties' request for Rule 11 sanctions is also denied
 
 
 [4]
 The court stated to Partners' counsel:
 All right. And the judgment has in effect of [sic] extinguished your lis pendens. You're not entitled to a lis pendens once that has come to judgment unless you post a cross-bond. And if you're prepared to do that, I'll be willing to listen on a cross-bond. If they want to put up $400,000, and you say that lis pendens is worth a million two to you, put up the million two. And it's as simple as that. And if you don't want to make that decision, I'll make it for you.
 Appellants' 1st app. at 58 (May 20, 1986 hearing transcript).
 
 
 [5]
 In an adversary proceeding brought by Cascade, the Bankruptcy Court held that the recordings did not amount to a perfected security interest and did not give constructive notice of the equitable lien included in the district court's September 15, 1985 judgment. Partners appealed from this ruling and the district court dismissed the appeal for lack of a final order under 11 U.S.C. § 158(d). We affirmed the district court's dismissal. Cascade Energy & Metals Corporation v. Banks (In re Cascade), No. 91-4083, 1992 WL 19492 (10th Cir. Feb. 7, 1992)